## Seaton v. Swem.

1. **Election**: WAGER: JUROR DISQUALIFIED. In a certain contested elec-
   tion case, one of the jurors at the trial on appeal in the Circuit Court
   had, prior to the election, made a small bet upon the result, and the bet
   became, by agreement, a wager upon the ultimate result of the trial.
   These facts he failed to disclose when questioned as to his qualifications
   as a juror. *Held*, that the juror was thereby disqualified, and that the
   verdict returned in favor of the party, upon whose success the juror had
   wagered, should be set aside.

*Appeal from Linn Circuit Court.*

WEDNESDAY, APRIL 5.

AT the regular election held in November, 1880, the ap-
pellant Seaton, and the appellee Swem, were candidates for
the office of sheriff of Linn county. The board of supervisors,
at their regular meeting as a board of canvassers, canvassed
the returns from the election precincts in said county, and
declared the appellee, Swem, elected sheriff of Linn county.
The appellant contested the election of Swem. The court
for the trial of this contested election, consisting of Daniel
Travis, chairman of the board of supervisors, and J. S. Ander-
son, Esq., chosen by Swem, and C. W. Kepler, Esq., chosen
by Seaton, on December 9, 1880, pronounced judgment that
the contestant, B. F. Seaton, had been duly elected sheriff of
Linn county. From this judgment Swem appealed to the
Circuit Court of Linn county. The cause in said Circuit
Court was tried to a jury, and a verdict was returned that the
incumbent, Swem, was duly elected sheriff. The appellant
filed a motion for a new trial, based upon the alleged miscon-
duct of certain of the jury, and of one Reip, the bailiff, who
had the jury in charge. The court overruled the motion and
entered judgment that the incumbent, Swem, was duly elected
to the office of sheriff and is entitled to the possession of the
same. The court also entered judgment against the contest-
ant for the costs, taxed at $265.60. The contestant appeals.

Seaton v. Swem.

*Blake & Hormel,* for appellant.

*Mills & Keeler* and *Rickel & Eastman,* for appellee.

DAY, J.—The appellant, in support of his motion for a new trial, filed the affidavit of one Frank Haynes, that he had 1. ELECTION: money bet upon the result of the election of wager : juror disqualified. sheriff, with one A. Caldwell, who served as a juryman in the trial of the cause, Caldwell betting that Edward L. Swem would be elected sheriff of Linn county, and Haynes betting to the contrary, and that the money so bet, and put up on the election, was subject to be paid on the decision of this cause. The affidavit of one G. A. Patterson was also filed, that on the 18th day of January, 1881, said A. Caldwell stated in the presence of affiant that it would be money in his (said Caldwell's) pocket to have Edward L. Swem declared elected sheriff of Linn county, and seated as said sheriff; that said Caldwell and said Edward L. Swem held a private conversation before Caldwell was summoned as a juryman in this cause; that almost immediately after said consultation, which took place at Park Place Hotel, Caldwell started for the court house, and immediately after reaching the court house he was chosen from among the bystanders as a juryman in the case. The affidavit of Frank Winson was filed, that on or about January 17, 1881, Caldwell stated in his presence and to him, that it would be money in his pocket to have Edward L. Swem elected sheriff. The plaintiff filed his affidavit stating that he never knew or heard of the facts set forth in the foregoing affidavits, until after the return of the verdict. The attorneys of plaintiff also filed their affidavit, stating that they never knew or heard of the facts stated in the foregoing affidavits, until after the return of the verdict, and that A. Caldwell, before being impaneled or received as a juror to try the cause, was sworn and examined as to his qualifications as a juror, and asked if he had ever formed or expressed any opinion as to the merits of the cause, or was in any manner interested in the action.

The appellee caused to be filed the affidavit of A. Caldwell, as follows: "That prior to or during the trial of said cause I never had any conversation, whatever, with E. L. Swem, or with either of his attorneys in regard to said suit or the matters involved therein, at the Park Plack Hotel, or any other place whatever; that I never spoke to said Swem about said matters in controversy at any time or place, prior to the decision of said cause, nor did he ever talk with me about the same, or about being a juror in said cause; that prior to the general election of November 2, 1880, I did make a bet of twenty-five cents with Frank Haynes that Swem would be elected sheriff; that said bet was made only at the solicitation of said Haynes, and more by way of banter than in earnest; that after the contest, before the election board of contest, was decided, at Haynes' request, I paid over the money to him; that it was such a trivial matter I had utterly forgotten it at the time I was called as a juror in the cause; that I had no interest whatever in the result of said action, and had neither formed nor expressed an opinion as to the merits of the action; that I never used the expression that it would be money in my pocket to have E. L. Swem declared elected sheriff of Linn county, as sworn to by G. A. Patterson, and Frank E. Winson, * * * but remember saying to said Winson that I did not care who was elected sheriff, although I could have made more from Swem, as he might have wanted livery from my stable; that said remark was made in a general conversation, and was not meant or intended by me as anything serious, as I had no conversation with said Swem at any time about livery. I am sure that I had no interest whatever in said Swem's election, and that the above matters made no impression, or had no influence upon me as a juror, or otherwise." The court made an order that the affiants appear and submit to a cross-examination, upon which Frank Haynes testified as follows: "Before election I bet twenty-five cents with Caldwell; I bet Seaton would be elected, and he bet Swem would be elected sheriff. The money was put

up in Mr. Parson's hands.  After the election, Mr. Caldwell drew the money with my consent.  Then Seaton contested the election, and the three persons decided in his favor, and after that, when Mr. Seaton was declared elected, Caldwell paid me back the money."

"*Question.*  What was said between you at that time, in regard to that money, in case it was subsequently reversed?

"*Answer.*  I told him if it went the other way I was to have the money, and if it went the other way again I was to pay him the money.  I told him I would pay him the money."

It appears clearly that, whilst the wager was paid to Haynes upon the determination in favor of Seaton, it was paid with the understanding that the whole amount should be paid back if the decision in favor of Seaton should be reversed.  The bet thus became a wager as to the ultimate result of the very trial in which Caldwell was called as a juror.  If these facts had been disclosed before he had been accepted as a juror, they certainly would have furnished ground for a challenge for cause.  It is entirely opposed to all our ideas of the impartiality which should characterize judicial proceedings, that controversies between parties should be decided by persons who have made wagers as to the result.  If it is competent for one juror to serve who has made such a wager, then the whole jury may be composed of persons who have wagers pending upon the result.  That such a thing should be tolerated is offensive to every notion of justice.  There can be no assurance that a just and impartial decision can come from such a source.  Decisions of courts can command respect and confidence only when it appears that they are announced by parties absolutely without prejudice or bias.  It is true the amount of the bet is very small.  But there is no legal principle upon which it can be said that a juror having a wager of one thousand dollars as to the result of a litigation is incompetent, and one having a wager of twenty-five cents is competent.  Courts cannot determine as to degree of bias,

nor will it do to hold a juror having any bias is competent. The wager seems to have been regarded by the parties to it as a matter not wholly without interest. When the 'result was declared in favor of Swem, Caldwell drew the whole sum, and when this result was reversed, and Seaton was declared elected, the amount was paid, to Haynes, not, however, without a promise to pay it back if Swem should ultimately obtain a decision in his favor. It will not do to say that Caldwell was not rendered incompetent, because the law would furnish him no remedy to recover the amount of the bet. If this be held, then all the jurors in a cause may have bets, however large, depending upon the result of the controversy, and still be competent. Who can say to what extent the desire of a party, who has made a bet, to have his judgment sustained, would influence him when called upon to determine from evidence, whether the fact accorded with or was opposed to his previously expressed opinion as to the result? Can it be said that a party who has made a bet, however small, as to a future event, has expressed no opinion as to the result? Can it be said that a person in such a situation is in a condition, impartially and without any bias, to weigh the evidence upon which depends the determination of the existence or non-existence of the event. Ordinarily one expects what he desires, and bets upon the accomplishment of what he expects. Usually the mere fact of making a bet indicates a bias. One who is entirely indifferent · respecting an event rarely makes a bet respecting it.

In *Essex v. McPherson*, 54 Illinois, 349, a verdict was set aside upon the ground that one of the jurors had previously made a bet of a neck tie that the result of the cause would be in favor of the prevailing party. The court said: " For a juror to set in the trial of a cause upon the result of which he has a wager depending, is a gross impropriety and offensive to the sense of justice. See *Stafford v. The City of Oskaloosa*, 57 Iowa, 748. A new trial should have been granted.

REVERSED.