## MARTIN *v.* POND.

*(Circuit Court, D. Minnesota.* February, 1887.)

1. **MORTGAGE—DEED ABSOLUTE ON FACE—BOND OF DEFEASANCE TO THIRD PERSON—FORECLOSURE.**

    A., the owner of land, conveyed it by absolute deed to B., as security for a debt. B. afterwards, with the co-operation of A., conveyed it to C., to secure a loan made by C. to A., C. at their request giving back a bond to convey, upon payment, to D. *Held,* that C. was justified in treating D. as the owner of the equity of redemption, although he knew that the deed from A. to B. was intended as a mortgage, and even though the bond to D. was in fact never delivered to him, and he never knew of it, and that a title obtained by C., by foreclosure proceedings against D. alone, was valid as against a claim on the part of A. or B., or their representatives.[1]

2. **SAME—FORECLOSURE—SERVICE BY PUBLICATION.**

    A suit for foreclosure of a mortgage, not seeking a personal judgment, is essentially a proceeding *in rem,* and service by publication, in a case allowed by the statute, is sufficient to give jurisdiction.

3. **SAME—MAILING SUMMONS TO WRONG ADDRESS—AFFIDAVIT—LAWS MINN. 1869, CH. 73, § 49.**

    Under Laws Minn. 1869, *c.* 73, § 49, allowing service by publication upon affidavit stating, among other things, that plaintiff has mailed a copy of the summons to defendant at his place of residence, "unless it is stated in the affidavit that his residence is not known to affiant," the fact that the address to which the copy of summons was mailed, as stated in the affidavit, was not in fact the residence of defendant, *held,* not to render the judgment void; the plaintiff having acted in good faith, upon the best information obtainable, the affidavit being in proper form, the publication being properly made, and the judgment reciting due service by publication.

4. **SAME—WHAT RIGHTS FORECLOSED—CLAIMS IN DIFFERENT RIGHTS.**

    The complaint in a mortgage foreclosure suit alleged that defendants claimed some interest in or lien upon the premises, as owners of the equity of redemption, which interest or lien, if any, it alleged to be subject to the lien of the mortgage, and prayed that defendants be foreclosed of all equity of redemption, and other interest in the premises. The decree ordered that the title of the purchaser at the sale should, in case of non-redemption, be adjudged free and clear of all equity of redemption on the part of defendants or those claiming under them. *Held,* that the proceedings foreclosed a title of defendant's derived from an execution sale, upon a judgment in favor of third parties antedating the mortgage, as well as his title as mortgagor.

In Equity.

*Bartleson & Shaw,* for complainant.

*Young & Lightner,* for defendant.

BREWER, J. This is a bill to redeem from a mortgage. The facts are these: Prior to November, 1873, R. J. Mendenhall owned the land in controversy, being a tract of 10 acres in the city of Minneapolis. On

---

[1] A deed absolute, on its face, and a bond for reconveyance executed at the same time, constitute a mortgage. Frey v. Campbell, (Ky.) 3 S. W. Rep. 368, and note.

November 21, 1873, he conveyed it, by deed absolute in form, to Peter Wolford. This conveyance was in fact simply as security for debts due from Mendenhall to Wolford, amounting to $12,000 or thereabouts. It was duly recorded December 8, 1873. On December 14, 1875, Wolford, to secure a loan of $12,500 then made by defendant Pond to Mendenhall, executed to said Pond a warranty deed of the land. This loan was evidenced by the note of Mendenhall for $12,500, bearing date December 14, 1875, payable five years after date, with interest at the rate of 12 per cent. per annum, payable semi-annually. At the time of receiving the deed, and as part of the same transaction, and by the direction of Mendenhall confirmed by Wolford, Pond executed a bond, for a deed of the land, to Cyrus Beede, as obligee, conditioned for a conveyance of the land to Beede upon payment of $12,500 and interest, according to the terms of Mendenhall's note, and that, in default of such payment, the bond should be void, and time was expressly declared to be of the essence of the contract. All parties to the transaction intended that this deed and bond should operate as a mortgage, and they were recorded together as a mortgage on December 18, 1875. Default having been made in the payment of interest, Pond proceeded to foreclose this mortgage, making Beede and his wife sole parties defendant. In fact, two foreclosure suits were prosecuted, upon the happening of successive defaults in payment of interest. Service was had in each by publication, default entered, and each passed to decree, sale, confirmation, and deed. These suits were commenced March 14, 1877, and July 5, 1877, respectively. Sale in the first suit was had July 7, 1877, and in the second, November 10, 1877. On January 21, 1874, P Van Valkenburg et al. recovered a judgment in this court against Mendenhall for $4,605.39. In July, 1876, this judgment was sold and assigned to Cyrus Beede. On July 18, 1876, execution was issued thereon, and the property in controversy, as well as several hundred other lots and tracts in Minnesota, were levied upon as the property of Mendenhall. All this property was sold by the marshal under this execution on September 28, 1876, and bid in by one Byron M. Smith at a mere nominal price, (the tract in controversy selling for $250,) in his own name, but really as the agent for Beede. No money was in fact paid, but simply a credit given on the judgment. Deeds were made to Smith, and on January 8, 1877, Smith deeded to Beede. On September 14, 1881, Beede conveyed the premises to W W. McNair; May 8, 1884, McNair conveyed to Samuel M. Smith; and June 20, 1884, Smith conveyed to plaintiff. On November 29, 1884, Peter Wolford also conveyed the land to plaintiff. The last conveyance was made after the commencement of this suit, and the fact is brought into the case by stipulation.

Now, upon these facts, I remark, in the first place, that at the time of the two foreclosure suits Beede held the entire equity of redemption. All rights, title, and interest in the property other than those of Pond, the mortgagee, were centered and vested in him. It is true, Beede testifies that the bond executed by Pond to him was never delivered, and that he had no knowledge of its existence until after the commencement

of this suit, and it is also true that delivery and acceptance are generally essential to the transfer and vesting of title. No man is forced to become the owner of land without his consent. But, as between Pond on the one hand, and Mendenhall and Wolford on the other, the latter, at the time of the loan, held the entire title, and, after they had directed the execution of the bond to Beede, they were, as against Pond, estopped from saying that Beede did not hold the equity of redemption, and this, whether Beede knew of their action or not. Pond, by proper proceedings against Beede, would cut off all their rights and interests as well as Beede's, and it was not necessary for him to prove knowledge and acceptance by Beede. If they put up a man of straw, they will not be heard to say that he is not one of flesh and blood. It is also entirely immaterial that the deed from Mendenhall to Wolford was only intended as a mortgage, or whether Pond knew this fact, for all title, legal and equitable, was vested in Wolford and Mendenhall, and the conveyance was made by one with the knowledge and consent and at the instance of the other. Wolford held this tract, as he did others, holding the legal title with the right to convey, and when he made a conveyance, under circumstances authorizing it, the grantee took the title. *Jackson* v. *Lawrence*, 117 U. S. 679; S. C. 6 Sup. Ct. Rep. 915. In that case a deed was executed as security for a debt. The grantee was authorized to sell on non-payment. He did sell, and his grantee was adjudged the holder of the perfect title, and free from the lien of an attachment issued against the debtor and first grantor, and levied upon the property prior to the sale and conveyance to the last grantee; and, in the course of the opinion, the supreme court say that it is entirely immaterial whether such purchaser and last grantee knew all the facts or not. In view of that decision, it may, at least, be doubted whether Beede had any interest in the land or equity of redemption other than that acquired under this bond.

The next question is as to the validity and sufficiency of the foreclosure proceedings,—one or both; for, if either is good, the other may be disregarded. It is insisted by complainant that the foreclosure of a mortgage is a personal action, and not one *in rem*, and impliedly that service on a defendant must be personal, and cannot be by publication, (*Hart* v. *Sansom*, 110 U. S. 151; S. C. 3 Sup. Ct. Rep. 586;) that, even if this be not correct, no sufficient affidavit for publication was filed, and therefore the service by publication was unauthorized, and insufficient to bring the defendants into court; and, finally, that, if defendants were brought in, the proceedings were only for the foreclosure of the mortgage created by the deed and bond, and did not cut off the equity of redemption acquired under the Van Valkenburg sale.

I cannot assent to either of these propositions. A foreclosure in the form in which it is ordinarily prosecuted is really, in its nature, partly an action *in rem*, for the seizure and sale of the property, and partly *in personam*, for the ascertainment of the debt of the mortgagor, and a personal judgment against him. In Waples on Proceedings in Rem, § 607, the author says:

"It has been held that a mortgage suit to foreclose by barring the right of redemption is personal, but that, so far as it is for the condemnation of property to pay debt, it is *in rem*. Courts, both state and national, have frequently spoken of the mortgage suit, in which there is the object of obtaining an order of sale, as of the latter description. Though nominally against persons, such suits are to vindicate liens. They proceed upon seizure. They treat property as primarily indebted, and, with the qualification above mentioned, they are substantially property actions. In the civil law, they are styled 'hypothecary actions,' and their sole object is the enforcement of the lien against the *res*. In the common law, they would be different if chancery did not treat the conditional conveyance as a mere hypothecation, and the creditor's right as an equitable lien; so, in both, the suit is a real action, so far as it is against property, and seeks the judicial recognition of a property debt, and an order for the sale of the *res*."

In *Day* v. *Micou*, 18 Wall. 160, the supreme court uses this language:

"In admiralty cases, and in revenue cases, a condemnation and sale generally pass the entire title to the property condemned and sold. This is because the thing condemned is considered as the offender or the debtor, and is seized in entirety. But such is not the case in many proceedings which are *in rem*. Decrees of courts of probate or orphans' courts, directing sales for the payment of a decedent's debts, or for distribution, are proceedings *in rem*. So are sales under attachments, or proceedings to foreclose a mortgage, *quasi* proceedings *in rem*, at least."

And in the later and leading case of *Pennoyer* v. *Neff*, 95 U. S. 734, we find the rule thus stated:

"It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties where the direct object is to reach and dispose of property owned by them, or some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state, they are substantially proceedings *in rem* in the broader sense which we have mentioned."

The proceedings in question were essentially *in rem*. They were to subject the property to the payment of the debt, and in no manner to establish a personal liability of the defendants. And, even if the mortgagor himself was the sole defendant in such an action, it would be strange, indeed, if, by simply leaving the state, he could defeat a foreclosure, and permanently retain the equity of redemption. No such inference can fairly be drawn from any well-considered case, state or federal.

With regard to the next objection, it may be conceded that notice to the defendant is essential to divest him of his rights and interests. But the publication is the notice,—it is the equivalent to the personal service of a summons; and it is not pretended that there was any defect in the publication in the case at bar. The defect alleged is in the affidavit for publication. The statute as to publication then in force is section 49, c. 73, Laws 1869, and reads:

"When the defendant cannot be found within the state,—of which the return of the sheriff of the county in which the action is brought that the defendant cannot be found in the county is *prima facie* evidence,—and, upon

filing of an affidavit of the plaintiff, his agent or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or cannot be found therein, and that he has deposited a copy of the summons in the post-office, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons by the plaintiff or his attorney in either of the following cases."

Now, in the second foreclosure suit—which alone I shall consider—a summons was issued and returned "not found," and an affidavit filed as follows:

"L. M. Stewart, being first duly sworn, says that he is attorney for the plaintiff in the above-entitled action; that he believes that the defendants are not residents of the state of Minnesota, and cannot be found therein; that he has deposited copy of the summons in said action in the post-office at Minneapolis, Minnesota, directed to each of said defendants, at Osage Agency, Kansas, their place of residence, and had prepaid the legal postage thereon; that the subject of this action is real property in the state of Minnesota, to-wit, for the foreclosure of a mortgage on real estate situated in the county of Hennepin aforesaid; and that the said defendants have, or claim to have, a lien upon or interest in said real estate, and the relief demanded in said action consists in excluding the said defendants from any interest or lien therein."

Now, this is, in form, all that the statute requires. But it is shown by the testimony that Osage Agency, Kansas, was not the place of residence of defendants; that they resided at Oskaloosa, Iowa; and this mistake, it is claimed, invalidated the affidavit, and rendered the publication void; and that the defendants were never brought into court, are not bound by this decree, and still retain the right to redeem. Mr. Stewart, in stating the place of residence of defendants, and in mailing to them copies of the summons, acted upon the only information he could obtain, and that information was such as to justify the action of any reasonable and prudent man. So the question is narrowed to this: Will such a misstatement, though believed to be true, and founded upon reasonable information, avoid the entire proceedings? Was it jurisdictional? Under the decision of the supreme court in a somewhat similar case, (*Cooper* v. *Reynolds*, 10 Wall. 308,) I must answer the question in the negative. That was an attachment case. The affidavit therefor was defective. But notwithstanding, the supreme court sustained the judgment. Justice MILLER, speaking for the court, says, on page 319:

"The affidavit is the preliminary to issuing the writ. It may be a defective affidavit, or, possibly, the officer whose duty it is to issue the writ may have failed in some manner to observe all the requisite formalities; but the writ being issued and levied, the affidavit has served its purpose, and though a revisory court might see in some such departure from the strict direction of the statute sufficient error to reverse the judgment, we are unable to see how that can deprive the court of the jurisdiction acquired by the writ levied upon the defendant's property."

The statute does not require that the affidavit be true. The case must be one in which service by publication can be had, and the affidavit is

but one step in the procedure. A defect in that step may be ground for reversal, but is it fatal to the jurisdiction? In some states a *præcipe* is required before summons can issue. Suppose, without *præcipe*, a summons is issued and served, would not the court have jurisdiction, notwithstanding the error in the procedure? So, here, the publication is the service, while the affidavit is only one step preliminary to the publication,—the service. I do not mean to hold that a publication without affidavit, or one without affidavit in the form required by the statute, would be sufficient to bring the defendant into court. That question is not in the case. All that I hold is that where the publication is beyond question, and the affidavit in the form required, a mistake like the one in question does not defeat the jurisdiction. Further, when the case came on for findings and decree, the record shows that the court found that service had been duly made, as appears from the following: "Due proof of the service of the summons therein, upon all of the defendants therein, having been made and filed, whereby it appears to the satisfaction of the court that said summons has been duly served upon all said defendants in the manner following, to-wit, by publication thereof, and by mailing a copy of the same to each of them at their respective places of abode, duly inclosed, directed, sealed, and postage prepaid." Can the truth of this finding be now challenged collaterally? With regard to the last objection, it may be that the plaintiff was ignorant of any equity claimed by defendant under the Van Valkenburg sale, and it may also be, as heretofore suggested, that defendant really took nothing thereby. Be that as it may, and while no reference is in terms made in the complaint to that sale, or any rights thereunder, yet the language is broad enough to call upon defendants to disclose all rights, equities, and claims. The allegation is: "Plaintiff further shows that the defendants have, or claim to have, some claim or interest in or lien upon said mortgaged premises, as owners of the equity of redemption thereof, which interest or lien, if any, is subsequent and subject to the lien of said mortgage of plaintiff; that no personal claim is made against any defendant." The prayer is "that the defendants, and all persons claiming under them, or either of them, subsequent to the commencement of this action, may be foreclosed of all equity of redemption and other interest in said mortgaged premises." And the decree is "that, upon the expiration of one year from the date of the order of confirmation of such sale, said purchaser or his assigns shall, upon application to the court, be entitled to a final decree herein, adjudging that the title to all such of said mortgaged premises as shall have been so sold and not redeemed is in such purchaser or his assigns, free and clear of all equity of redemption on the part of said defendants, or any and all persons claiming through or under them." Surely, language could not be more sweeping and comprehensive than this. The defendant is challenged to disclose any equity or claim, and the decree cuts off all equity, and not the single equity under the bond. My conclusion, therefore, is that the complainant has no equity of redemption, and that the bill must be dismissed.

I may be permitted to add that this is one of those suits which ought

not to be encouraged. A loan was made, security taken, default occurred in the payment, and foreclosure was had. All was done in good faith, with no circumstances of fraud, concealment, or oppression. The proceedings were apparently regular. A judicial sale was made and confirmed. Years after, when values have changed, a speculator comes prying into the records to see if some technical defect cannot be found in the judicial proceedings, and a title, obtained in good faith, and in reliance upon those proceedings, be destroyed. A distinguished lawyer arguing before me, some years ago, a somewhat similar case, characterized the effort, with more of vigor than compliment, as land piracy. Public policy requires that judicial proceedings be upheld, and that titles obtained in those proceedings be safe from the ruthless hand of collateral attack. If technical defects are adjudged potent to destroy such titles, a judicial sale will never realize the value of the property, for no prudent man will risk his money in bidding for and buying that title which he has reason to fear may years thereafter be swept away through some occult and not readily discoverable defect.

Let the defendant have a decree dismissing the bill.