## OCCIDENTAL LIFE INS. CO. v. GRAHAM.

Circuit Court of Appeals, Eighth Circuit. November 12, 1927.

No. 7564.

1. **Insurance** ⟪⇒⟫659(2).—On defense of suicide, widest latitude of inquiry as to existence of motive by insured to commit suicide should be permitted.

In action on life insurance policy in which insurer set up defense of suicide within one year within the exception of the policy, widest latitude of inquiry as to existence of motive for such a course of conduct present in insured's mind when death occurred must be permitted to enable insurer to overcome presumption against suicide, if it can.

2. **Insurance** ⟪⇒⟫659(2)—Exclusion of evidence tending to show insured had motive for committing suicide held reversible error.

In action on life insurance policy in which insurer set up defense of suicide within one year, exclusion of evidence tending to show that insured had a motive to commit suicide *held* reversible error.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by Cora McD. Graham against the Occidental Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial awarded.

Lawrence F. Lee, of Albuquerque, N. M., and Richard S. Fillius, of Denver, Colo. (McMillen & Lee, of Albuquerque, N. M., and Fillius, Fillius & Winters, of Denver, Colo., on the brief), for plaintiff in error.

E. M. Sabin, of Denver, Colo. (James N. Sabin, of Denver, Colo., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

POLLOCK, District Judge. This is an action at law, brought by Cora McD. Graham to recover the contents of a policy of life insurance issued by plaintiff in error on the life of one Royal R. Graham, her husband. For convenience, the parties will be referred to as they stood on the record in the court below.

The assured deceased September 9, 1925, within one year from the date the policy was issued. The policy contains the following provision: "Death by self-destruction, sane or insane, within one year of the date of the issue hereof shall limit the amount payable by the Company to the total premiums paid by the insured, and no more. This policy is issued on the nonparticipating plan and the reserve during the first year shall be computed as for term insurance. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement made by the insured shall void this policy."

A proper tender of all premiums theretofore paid was made to plaintiff and refused. In defense of the action the insurance company relied alone upon the fact that the assured within one year from the date of the issuance of the policy died by his own hand. On this issue there was a trial, verdict, and judgment for plaintiff. The insurance company brings the case here and makes two assignments of error relied upon for reversal: (1) That the trial court erred in refusing to direct a verdict for defendant; (2) that the trial court erred in excluding competent and relevant evidence tending to establish the defense of suicide.

[1] We have read and carefully considered the evidence found in the record in the light of all the circumstances of the case as shown therefrom. While we have grave doubts whether on all the evidence found in the record there was sufficient competent evidence that the death of assured occurred through other than suicidal means to carry the case to the jury, yet, in view of matters to be subsequently noticed, and lest any possible injustice may be done, we have concluded to

22 F.(2d)—34

overrule and deny this assignment of error, and pass to the second. And, in considering the proposition involved therein it must be borne in mind, almost universally, self-destruction by a sane person proceeds from a motive or motives impelling the deceased to this course of action. Hence, in cases involving the question of deliberate self-destruction, as did this case, the widest latitude of inquiry as to whether there was a motive for such course of conduct present in the mind of the victim at the time the death occurred should and must be indulged.

As the presumption in law is against the claim of suicide by one while sane, and before such claim may be found established in fact the evidence must overcome this presumption, therefore it is imperative to establish the intent in the mind of the deceased impelling him to resort to such act before the fact of suicide is believable.

In re Eaves (C. C.) 30 F. 26, it is said: "The actions of rational men are usually prompted by some motives. A motive is some cause or reason that moves the will, and induces action. A crime is a voluntary act, proceeding from a wicked motive, and while it is sometimes difficult to trace the connection between the wrongful act and the inducing motive, human reason and experience teach us that few men will voluntarily expose themselves to criminal punishment, contempt, and infamy without being influenced by some strong impelling cause. In the investigations of alleged crime, there is a just and reasonable rule that, when the evidence of the offense charged is conflicting or doubtful, the absence of all proof of an inducing motive gives rise to a strong presumption of innocence," etc.

See, also, Goldschmidt v. Mutual Life Insurance Co., 134 App. Div. 475, 119 N. Y. S. 233. As to the extent to which evidence may properly go to prove motive or intent in the mind, see Life Insurance Companies v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706.

[2] Taking the foregoing as established principles of the law in like cases, we are of the opinion the trial court at the trial of this case erred in excluding evidence competent and relevant as tending to show the motives which the defense insisted impelled deceased to the act of voluntary self-destruction. Such, for example, as the evidence offered by the witness Kenneth W. Robinson, chairman of the Grievance Committee of the Bar Association of Denver, Humphrey, secretary of the association, and other like evidence offered for the purpose of showing the prob-

able effect the same would have on the mind of the deceased in the troubled and grievous condition of his affairs. There are so many instances found in this record of this character of evidence offered and excluded, it is impossible to refer to all.

For the error in excluding competent and relevant evidence to show a motive on the part of the deceased to voluntarily end his life by suicide, the judgment below must be reversed, and a new trial awarded.