## O'BRIEN v. GENERAL ACCIDENT, FIRE & LIFE ASSURANCE CORPORATION, LIMITED, OF PERTH, SCOTLAND.

### No. 8716.

Circuit Court of Appeals, Eighth Circuit.

June 9, 1930.

Arthur F. Mullen, of Omaha, Neb. (Richard C. Hunter and Charles C. Sheppard, both of Omaha, Neb., on the brief), for appellant.

Yale C. Holland, of Omaha, Neb. (J. A. C. Kennedy, G. L. De Lacy, and Charles F. McLaughlin, all of Omaha, Neb., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

Appellant, who was plaintiff in the court below, was beneficiary in a policy of accident insurance issued by appellee August 11, 1926, to one James O'Hara and, in the capacity of beneficiary, brought this suit to recover on the policy. In her petition she alleged that O'Hara was accidentally killed on August 29, 1926, when the policy was in full

force and effect. The defense, at least in part, was that O'Hara committed suicide. What the evidence upon that issue was we do not know, since much of the evidence appears to have been omitted from the transcript. Even the policy sued on is not included. The verdict of the jury was for appellee. A motion for new trial was overruled.

The assignment of errors, four in number, is as follows:

"1. The court erred in overruling the motion for a new trial.

"2. There was misconduct of the juror, Charles Connor, as shown by the affidavits that appear in the transcript.

"3. The court erred in permitting the witness, Dr. Vernon Thomas, to testify at the trial regarding communications had between the deceased, James O'Hara, and himself, which evidence was admitted over the objection of the plaintiff, the specific ground of objection being that said communications were privileged between the deceased, James O'Hara, and the witness, Dr. Vernon Thomas, and the evidence of said Dr. Vernon Thomas was incompetent, irrelevant and immaterial and said communications were professional communications made to him by the deceased at the time when the said deceased was a patient of the said Dr. Vernon Thomas.

"4. The court erred in permitting the introduction of evidence, over the objection of the plaintiff, as to transactions and conversations had between the deceased and other witnesses, in particular, the witness, Dr. Vernon Thomas, which evidence was hearsay and was incompetent, irrelevant and immaterial."

1. The first assignment may be disposed of briefly. Rule 11 of this court, governing assignments of errors on appeals, as it was when this appeal was taken and presented, provides that:

"The plaintiff in error or appellant shall file with the clerk of the court below, with his petition for the writ of error or appeal, an assignment of errors, which shall set out separately and particularly each error asserted and intended to be urged. No writ of error or appeal shall be allowed until such assignment of errors shall have been filed. When the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected. When the error alleged is to the charge of the court, the assignment of errors shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused. Such assignment of errors shall form part of the transcript of the record and be printed with it. When this is not done, counsel will not be heard, except at the request of the court; and errors not assigned according to this rule will be disregarded; but the court, at its option, may notice a plain error not assigned."

The rule requires that the assignment "shall set out separately and particularly each error asserted and intended to be urged," and that "errors not assigned according to this rule will be disregarded." The first assignment certainly does not particularize as to the asserted error. There is no suggestion as to why it was an error to overrule the motion for a new trial. It is simply asserted it was an error and that is all.

Moreover, the granting or sustaining of a motion for a new trial is within the discretion of the trial court, and, generally speaking, its ruling on such a motion is not reviewable. Holmgren v. United States, 217 U. S. 509, 521, 30 S. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Mattox v. United States, 146 U. S. 140, 147, 13 S. Ct. 50, 36 L. Ed. 917; Reagan v. Aiken, 138 U. S. 109, 113, 11 S. Ct. 283, 34 L. Ed. 892; Pittsburgh, C. & St. L. Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58; McLanahan et al. v. Insurance Co., 1 Pet. 170, 182, 7 L. Ed. 98. It is only when the court has abused or refused to exercise its discretion that its action may be reviewed. Paine v. St. Paul Union Stockyards Co. (8 C. C. A.) 35 F.(2d) 624, 627; United Press Ass'ns v. National Newspaper Ass'n (8 C. C. A.) 254 F. 284, 285. It follows that, before there is anything for review, the assignment must set out facts indicating abuse of or failure to exercise discretion. There is nothing of that nature in the first assignment.

2. Although upon the oral argument it was vigorously maintained by appellant's counsel that the second assignment of error was in no way involved in the first assignment or intended as a part thereof, obviously it is either so involved or it is nothing. It too does not conform to Rule 11. It asserts as error that "there was misconduct of the juror, Charles Connor." But there is no hint in the assignment as to what that misconduct was, no suggestion as to wherein the trial court erred in connection with the alleged misconduct.

But we assume, notwithstanding the contention of appellant's counsel, that it was intended by the second assignment to particularize assignment No. 1, to indicate the ground on which the motion for new trial ought to have been sustained, and to suggest perhaps that the trial court abused its discretion when it denied the motion.

We consider then whether the trial court did abuse its discretion by denying a new trial notwithstanding the showing made concerning the juror Charles Connor.

The showing as to this juror was in the form of an affidavit of counsel for appellant, filed after verdict, and of the juror's testimony under oath. Counsel's affidavit set out that whereas on the voir dire examination of the panel Connor, who was an insurance agent, testified that he was not an agent of appellee, that he had no connection with it, and that he had had no business relations with it, he was in fact an agent of appellee and had had business with it. Connor testified that he was not an agent of appellee and had never been, that he had had no connection with, and that at the time of the voir dire examination he had no knowledge of ever having had any business with the appellee, but that after the verdict he learned that several years before certain applications for insurance secured by him had been placed by another agent with the appellee company. Upon this business the commissions received by him had been about $60. He was ignorant of the fact when he was examined and while he was serving as a juror that any insurance business originating with him ever had been placed with the appellee. It was his further testimony that on the voir dire examination he was not asked whether he had had any business with the appellee. He said he would have answered in the negative had he been asked that question.

Clearly upon this showing the trial court was justified in finding that the juror had been guilty of no misconduct and in overruling the motion for a new trial. The trial court might well have found and most probably did find that the juror had answered every question asked him fully and truthfully and that in no real sense did he have or had he had any connection with the appellee company.

In this connection appellant has cited cases announcing the rule that the employee of a corporation is not competent to act as a juryman in a case in which the corporation is a party. Burnett v. Railroad Co., 16 Neb. 332, 334, 20 N. W. 280; Louisville, etc., R. Co. v. Cook, 168 Ala. 592, 53 So. 190, 192; Central Railroad Co. v. Mitchell, 63 Ga. 173, 179; Hubbard v. Rutledge, 57 Miss. 7, 12; Pearce v. Mining Co., 149 Mich. 112, 112 N. W. 739, 740, 12 Ann. Cas. 304; Blevins v. Cotton Mills Co., 150 N. C. 493, 497, 64 S. E. 428; Norris v. Morgan Mills, 154 N. C. 474, 480, 70 S. E. 912; State v. Dushman, 79 W. Va. 747, 91 S. E. 809, 810; Ensign v. Harney, 15 Neb. 330, 18 N. W. 73, 48 Am. Rep. 344; Crawford v. U. S., 212 U. S. 183, 192, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392. Other cases are cited holding that a stockholder is not qualified to act as juryman in a case when the corporation is a party. Miller v. United States, 38 App. D. C. 361, 40 L. R. A. (N. S.) 973; McElhanon v. State, 99 Ga. 672, 26 S. E. 501, 504; State v. Thompson, 24 Utah, 314, 67 P. 789, 790. And cases are cited holding that, where a juror deceives or misleads a party by falsely testifying that he has no interest and is unprejudiced and impartial, on discovery of the fact, after verdict, a new trial will be ordered, even though he claims to have acted impartially. Hyman v. Eames (C. C.) 41 F. 676; State v. Wright, 112 Iowa, 436, 84 N. W. 541, 542; State v. Cleary, 40 Kan. 287, 19 P. 776, 779; State v. Thompson, 24 Utah, 314, 67 P. 789, 790; Seaton v. Swem, 58 Iowa, 41, 11 N. W. 726; Pearcy v. Ins. Co., 111 Ind. 59, 12 N. E. 98, 99, 60 Am. Rep. 673; Ensign v. Harney, 15 Neb. 330, 18 N. W. 73, 48 Am. Rep. 344; Bennett v. Howard, 3 Day (Conn.) 219, 223; State v. Watkins, 9 Conn. 47, 21 Am. Dec. 712. Still other cases are cited for the rule that a juror who has deceived or misled the court and counsel by false or incorrect answer cannot, by a subsequent statement, repair the legal injury caused by his conduct on his preliminary examination. Pearcy v. Ins. Co., 111 Ind. 59, 12 N. E. 98, 99, 60 Am. Rep. 673; Hudspeth v. Herston, 64 Ind. 133, 134; Territory v. Kennedy, 3 Mont. 520; Ensign v. Harney, 15 Neb. 330, 18 N. W. 73, 48 Am. Rep. 344; Nelson v. Dickson, 63 Ga. 682, 685, 36 Am. Rep. 128. Finally appellant has cited cases holding that, even though a person is ignorant of his interest or relationship, if he has misled a party to the suit, he is not qualified to act as a juryman, and, after the fact is discovered and objection is made, courts generally grant a new trial. McElhannon v. State, 99 Ga. 672, 26 S. E. 501; Moore v. Farmers' Mutual Ins. Ass'n, 107 Ga. 199, 33 S. E. 65; Bank v. Tuck, 107 Ga. 211, 33 S. E. 70; Hudspeth v. Herston, 64 Ind. 133, 134; Lyens v. State, 133 Ga.

587, 597, 66 S. E. 792; Jewell v. Jewell, 84 Me. 304, 24 A. 858, 18 L. R. A. 473.

Each of the cases cited by appellant we have read and carefully considered. For various reasons none of them helps appellant. In the majority of instances they are cases in which the question of a juror's disqualification arose on the voir dire examination and in which an exception was saved to the court's ruling. Such a situation furnished something for review by the appellate court. In other instances, where the juror's disqualification was discovered only after verdict and where a motion for a new trial was denied notwithstanding that discovery, state statutes absolutely disqualified the juror or made a juror's misconduct ground for new trial. Moreover, in those instances, contrary to the rule in federal courts, appeals were from the action of the trial court on its ruling on a motion for a new trial. In other words, action of the trial court on such a motion was not discretionary. None of the cases are in point.

3. The third and fourth assignments have to do with the competence of certain testimony. Like the first and second, they plainly are insufficient under rule 11 and should be disregarded. That rule, as we have seen, specifically provides that, "when the error alleged is to the admission or rejection of evidence, the assignment of errors shall quote the full substance of the evidence omitted or rejected. * * * " These assignments not only do not quote the full substance of the evidence rejected, but they do not contain the slightest suggestion as to the nature of that evidence.

A rule disregarded at last becomes no rule. A court which does not respect its own rules cannot well ask others to respect them. The proviso in the rule that "the court, at its option, may notice a plain error not assigned" should not be too often exercised, but only in the most unusual situations, else the whole purpose of requiring the assignment of errors is lost. It is a purpose too important to be lightly sacrificed. But, "as an act of grace," to use the language of Faris, J., speaking for this court in Weber v. United States, 32 F.(2d) 110, 111, we have considered the questions raised.

4. We have seen that one of the defenses alleged in appellee's answer was that O'Hara committed suicide. Apparently; although the policy is not here, under its terms suicide was a complete defense. Doubtless anticipating what might be shown in evidence in that connection by appellee, appellant, as a part of her case, put on testimony to prove that before his death O'Hara was in a good condition of physical and mental health. Appellant, who was O'Hara's fiancée (they were shortly to be married) went so far in her testimony as to say that O'Hara's doctor had informed him there was nothing wrong with him, that all he needed was a little rest.

To meet this testimony appellee called as a witness one Thomas, a chiropractor, who testified, among other things, (1) that O'Hara had told him that he (O'Hara) was impotent; and (2) that upon examination he found that that was true. The contention of the appellant is that O'Hara's statement to Thomas was a privileged communication made by a patient to his physician and therefore incompetent, and that it was prejudicial error to overrule appellant's objection to it on that ground.

If the communication made by O'Hara to Thomas was privileged it is because of some Nebraska statute. At common law no communications of patients to physicians were privileged. 40 Cyc. 2381. The pertinent Nebraska statute (section 8840, Compiled Statutes of Nebraska, 1922) is as follows:

"§ 8840. *Privileged Communications.*— No practicing attorney, counselor, physician, surgeon, minister of the gospel or priest of any denomination, shall be allowed in giving testimony to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

With this statute before us four questions present themselves: (1) Is a chiropractor a physician within the meaning of the statute? (2) Was the communication to Thomas such a one as is covered by the statute? (3) May another than the patient claim the privilege created by the statute? and (4) May the privilege be waived and, if so, by whom?

Passing the first question and at once answering the second in the affirmative, we come to the third. As to that the rule is thus stated in 40 Cyc. 2394, "the privilege is that of the patient * * * no other person has the right to object." A Nebraska case that to some slight extent bears on the question is Thrasher v. Nebraska, 92 Neb. 110, 138 N. W. 120, 121, Ann. Cas. 1913E, 882, which contains the language: "Communications between patient and physician were not privileged at common law, but de-

pend alone upon the statute. It is to be applied only as between them, and is for the protection of the patient." It was a case in which a communication of a patient to a physician was sought to be proved at the trial of one charged with the murder of the patient over the objection of the alleged murderer. But, in the absence of any more applicable decision and of any contention on the part of the appellee based on this ground we are disposed to hold that the appellant had the right here to object on the ground of privileged communication. There is at least dictum in the case of Sovereign Camp of W. O. W. v. Grandon, 64 Neb. 39, 41, 89 N. W. 448, 451, supporting this conclusion.

We are thus brought to the fourth and last of the questions stated, Could the appellant waive the privilege and did she do so?

The answer to the first part of this question depends upon the construction given section 8841 of the Compiled Statutes of Nebraska of 1922. That section reads as follows:

"§ 8841. * * * The prohibitions in the preceding sections [which include section 8840 above set out] do not apply to cases where the party in whose favor the respective provisions are enacted, waives the rights thereby conferred."

One then who is a "party in whose favor" section 8840 was enacted may waive the privilege. Who is such a "party"? If we look only at the language of section 8840, we must say the patient is that "party." The Supreme Court of Nebraska in Thrasher v. Nebraska, supra, said the statute is "for the protection of the patient." But the appellee earnestly contends that a later opinion of the Nebraska Supreme Court in Sovereign Camp of W. O. W. v. Grandon, supra, puts a broader construction on the statute. Therefore we carefully consider that opinion.

The Grandon Case was one in which the widow of one Grandon, the widow being beneficiary in a certificate of fraternal insurance on the life of Grandon, brought suit against the insurer on the certificate. The defendant put Grandon's physician on the witness stand. Plaintiff objected to testimony by the physician on the ground of privileged communication. That objection was sustained. On cross-examination of the physician, plaintiff had him testify as to what Grandon's state of health actually was. On redirect defendant then sought to examine him on the same subject, contending that plaintiff by her cross-examination had

waived the privilege. The trial court ruled that the privilege still continued. As to that the Supreme Court said: The plaintiff "opened up the question of his [Grandon's] condition, and thereby *waived* the privilege which the statute gave *her*."

The opinion of the Supreme Court of Nebraska in the Grandon Case determines two things: (1) That the beneficiary in a policy of insurance on the life of another who has made communications to or been examined by a physician, is a "party in whose favor" section 8840 was enacted; and (2) that such beneficiary under section 8841 may waive the privilege.

The second part of our fourth question is, In the present case did the appellant as beneficiary waive the privilege?

Here again appellee relies on the Grandon Case, insisting that that case holds that, wherever one who has the right to waive the privilege opens up the question of the physical condition of one who has been a patient of a physician, by so doing he has waived the privilege. A careful consideration of the Grandon Case forces us to the conclusion that such an interpretation of that case is an erroneous one.

What the Grandon Case holds is this, and no more than this, that where one, who has the right to assert the privilege, himself calls upon the physician to testify, by that act he waives the privilege, and the other party may then examine the same physician. That the Supreme Court of Nebraska meant no more than that becomes apparent when we consider the one case which that court cited in support of its conclusion, Morris v. Railroad Co., 148 N. Y. 88, 42 N. E. 410, 413, 51 Am. St. Rep. 675.

In the Morris Case (it was a suit for damages for personal injuries) the plaintiff had been examined by two physicians at the same time and together. She called one to testify in her behalf as to her injuries. The defendant called the other. There was objection on the ground of privileged communications. The Court of Appeals of New York held that the objection should have been overruled, saying:

"We think that a construction of the statute which permits a patient who has been attended by two physicians at the same examination and consultation to call one of them as a witness to prove what took place, or what he learned, thus making public the whole interview, and still retain the right to object to the other, is unreasonable and un-

just, and should not be followed. The waiver is complete as to that consultation when one of them is used as a witness."

In the same opinion the Court of Appeals expressly said that one who only discloses his own physical condition does not thereby waive the right to object to his physician's testimony.

We conclude then that under the Nebraska law as it was before section 8841 was amended in 1925 (Laws 1925, c. 74) appellant, by putting on lay testimony as to the physical and mental condition of O'Hara, did not waive the right to object to testimony by his physician.

There remains for consideration whether the 1925 amendment of section 8841 by the Legislature of Nebraska makes that a waiver which before would not have been. The section as amended reads as follows:

"Section 8841. *Prohibitions Waived.*— The prohibitions of the preceding sections do not apply to cases where the party in whose favor the respective provisions are enacted, waives the rights thereby conferred; and if a party to any action now pending, or hereafter brought, shall offer evidence with reference to his physical or mental condition, or the alleged cause thereof, or if the personal representative of a deceased person in any such action shall offer such evidence as to such deceased person, the right conferred by Section 8840, Compiled Statutes of Nebraska for 1922, shall be deemed to have been waived as to any physician or surgeon who shall have attended said party or said deceased person."

This amendment had at least one definite effect. After its adoption, although, as we have seen, such was not the case before, one who has the right to waive the privilege does waive it by offering any testimony with reference to the physical or mental condition of the patient. That was an enlargement of one branch of the doctrine of the Grandon Case.

The question now is, Did the amendment, by seemingly extending the power of waiver to those who had not before had it, inferentially deny it to some, including beneficiaries, who theretofore, under the Grandon Case, had that power. We think not. The intention of the Legislature was not limitation but enlargement. That part of the section in its original form, which was retained, was retained with all the meaning theretofore given it by the judicial interpretation. So the beneficiary may still waive the privilege. Under the amendment he does

waive it by offering any testimony touching the physical or mental condition of the insured.

5. The contention that the testimony of Thomas as to what O'Hara told him was incompetent as hearsay is also made. Not only is the assignment of this error insufficient, but the testimony when offered was not objected to on that ground. McFarland v. National Bank (8 C. C. A.) 26 F.(2d) 890, 892; Wear v. Imperial Window Glass Co. (8 C. C. A.) 224 F. 60, 63. Again, Thomas testified to the facts about which O'Hara told him; hence statements made by O'Hara, even if hearsay, added little to the appellee's case. The error, if any, therefore, was not prejudicial. Finally, when suicide was an issue, the statements made by O'Hara were in no true sense hearsay. Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 295, 12 S. Ct. 909, 36 L. Ed. 706; Occidental Life Ins. Co. v. Graham (C. C. A.) 22 F.(2d) 528, 529. His statement that he was impotent was not admitted to prove that he was impotent but as external indication of a worried state of mind which might prompt suicide.

The judgment below should be and is affirmed.