Filed May 19, 1887.

No. 12,517.

Pearcy v. The Michigan Mutual Life Insurance Company.

JUROR.—*Examination of, on Voir Dire.—Misconduct.—Duty of Juror.—Practice.* —In the examination of a juror upon his *voir dire*, if the general question asked fairly arouses his attention and directs it to the information desired, it is enough without specific questions covering minute phases of the subject, and it is the duty of the juror to make full and truthful answers, neither falsely stating any fact nor concealing any material matter within the general scope of the question, and any violation of this rule is such misconduct as is prejudicial to the party.

SAME.—*New Trial.—Insurance.*—In an action against a life insurance company to recover upon a policy of insurance, where a juror, in response to a question asked in the examination of the jury as to whether he held a policy of insurance issued by the defendant, answered in the negative, the truth being that he had taken out such a policy on his life for the benefit of his wife, the plaintiff having no knowledge of the fact, he is guilty by reason of such concealment of such misconduct

as entitles the plaintiff to a new trial, notwithstanding his affidavit and those of his fellow-jurors, that in arriving at their verdict they were guided solely by the law and evidence.

From the Jasper Circuit Court.

*E. P. Hammond* and *W. T. McNeil,* for appellant.

*W. S. Hartman* and *W. H. Hamelle,* for appellee.

ELLIOTT, C. J.—The appellant's complaint is based on a policy of insurance issued by the appellee on the life of John Pearcy, the husband of the appellant.

The appellant asks a new trial for the reason, among others, that Ezra Bowman, one of the members of the jury, was incompetent, and because he was guilty of misconduct. In the affidavits filed by the appellant it is stated that each of the jurors was asked "whether he or any of his family held any life insurance policy issued by the defendant," and that each of the jurors answered that neither he nor any of his family held a policy. The affidavits filed by the appellee state that the question asked each of the jurors was: "Do any of you hold a policy of life insurance issued by the defendant, the Michigan Mutual Life Insurance Company?" and that the jurors were not asked: "Do you, or any member of your family, hold such a policy." It was further shown that Ezra Bowman had taken out a policy on his life for the benefit of his wife, that the policy was in force at the time of the trial, and that the fact that such a policy was issued was unknown to the plaintiff and her attorneys until after the trial. In the affidavit filed by Bowman he states that the question asked was: "Do you hold a policy of life insurance issued by the Michigan Mutual Insurance Company?" but he does not deny that he had taken out a policy for the benefit of his wife. He and the other jurors swear, that in rendering their verdict, they were influenced solely by the law and the evidence.

It is of high importance to a litigant that the triers of his cause should be impartial and disinterested men, and the

law makes careful provision for securing him this right. In speaking of this right the Court of Appeals of New York said : " The object of the law is to procure impartial, unbiased persons for jurors. They must be *omni exceptione majores.* They must have no interest in the subject-matter of the litigation." *Diveny* v. *City of Elmira,* 51 N. Y. 506. The Supreme Court of Nebraska declared a like doctrine in *Ensign* v. *Harney,* 15 Neb. 330 (48 Am. R. 344), where it was said : " Unless fair-minded, unbiased jurors can be selected, a trial becomes a mere farce, dependent not upon the merits of the case, but upon extraneous circumstances, such as the bias, prejudice, or interest of the jury. To determine the competency of a juror, an oath is administered to him and he is required to answer all questions touching his qualifications as a juror, not generally, but in that particular case. Great latitude is allowed in such an examination, and if it appears probable that the juror is not indifferent between the parties, he is excluded."

Other courts have asserted a similar doctrine; thus, in *Bradbury* v. *Cony,* 62 Maine, 223 (16 Am. R. 449), the court said : " In the trial of a cause, the appearance of evil should be as much avoided as evil itself. It is important that jurymen should be devoid of prejudice. It is hardly less so, that they should be free from the suspicions of prejudice."

So, in *Melson* v. *Dickson,* 63 Ga. 682 (36 Am. R. 128), it was said : "A big part of the battle is the selection of the jury, and an impartial jury is the corner-stone of the fairness of trial by jury."

The principle is so plain and just that it needs little more than a bare statement, and we refrain from further reference to authorities, although they are very abundant.

The examination of a juror on his *voir dire* has a two-fold purpose, namely, to ascertain whether a cause for challenge exists, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. It is often important that a party should know

the relation sustained by a person called as a juror to his adversary, in order that he may interpose a challenge for cause, or exercise his peremptory right to challenge. It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact nor concealing any material matter, since full knowledge of all material and relevant matters is essential to a fair and just exercise of the right to challenge either peremptorily or for cause. A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct is prejudicial to the party, for it impairs his right to challenge. In this instance the appellant had a right to a full and truthful answer from Bowman, and it was his duty to make that answer without evasion, equivocation or concealment.

We think that the question asked the juror required him to answer as to the policy taken out on his own life for the benefit of his wife. This is our conclusion upon the assumption that the question was that which the appellee maintains it was. It was not incumbent upon the appellee to minutely cover by a long series of specific questions all phases of the subject, but it was enough to ask such a question as would indicate to the mind of a fair and reasonable man what information the examining counsel sought to elicit. It seems clear that such a question as that asked Bowman ought to have drawn from him the fact that he had taken out a policy on his own life for the benefit of his wife, for the question certainly indicated that information as to his interest in the company, as well as his connection with it, was sought by the counsel conducting the examination.

The authorities support our conclusion that if the general question fairly arouses the juror's attention and directs it to the information desired, it is enough without specific questions covering minute phases of the subject.

In *Rice* v. *State*, 16 Ind. 298, the juror was asked as to whether he had formed an opinion, and he answered that he

had not, but no inquiry was made as to whether he had served on the grand jury which found the indictment, and yet it was held, on proof that he had been a member of the grand jury, that the accused was entitled to a new trial. The general question here under discussion was well and elaborately discussed in the case of *Block* v. *State*, 100 Ind. 357. In that case no inquiry was made as to whether any of the jurors was a deputy of the prosecuting attorney, and yet a new trial was ordered on its being shown that one of the jurors was the prosecutor's deputy.

In *Lamphier* v. *State*, 70 Ind. 317, a juror was asked generally as to whether he was a freeholder or householder, and, by reason of an erroneous opinion, he gave an incorrect answer, yet it was held that the accused was entitled to a new trial.

It is true that in exact technical strictness the policy belongs to the beneficiary. *Wilburn* v. *Wilburn*, 83 Ind. 55; *Pence* v. *Makepeace*, 65 Ind. 345. But in the examination of jurors it is not essential that counsel should employ terms with strict accuracy, for all that need be done is to fairly call the juror's attention to the subject on which information is sought, and indicate to him with reasonable certainty and clearness the purpose of the question. It is common for one who has his life insured for the benefit of his wife or family to regard himself as holding the policy. Nothing, indeed, is more common than for one who has insured his life for the benefit of his family to speak of himself as having the policy, and very few men, if asked the question if they had a policy in a designated company, would think of giving any other answer than that they did have such a policy, even though the policy was payable to some one else. In a broad sense, a man whose life is insured has a policy, although the beneficial interest in it may be in another person, for the policy which expresses the contract is on his life, and he it is that the company insures. We regard it as quite clear that the question asked Bowman required him to

answer as to a policy taken out on his own life, although that policy was for the benefit of his wife.

The statement of Bowman, that he was influenced solely by the law and the evidence, does not remedy the wrong. A juror who has deceived or misled the court, or the counsel, by a false or incorrect answer, can not, by a subsequent statement, repair the legal injury caused by his conduct on his preliminary examination. *Hudspeth* v. *Herston,* 64 Ind. 133; *Lamphier* v. *State, supra; Block* v. *State, supra; Territory* v. *Kennedy,* 3 Mont. 520; *United States* v. *Upham,* 2 Mont. 170.

There are many cases in which the social and business relations between the juror and a party will sustain a challenge for cause, and the authorities go very far toward establishing a rule which would make an interest such as that held by Bowman a cause for rejecting the juror. *Davis* v. *Allen,* 11 Pick. 466; Thom. & Merr. Juries, section 179; Proff. Jury Trials, section 177. But we need not and do not decide whether the interest of Bowman was such as would have warranted a challenge for cause, for it is enough for the present to decide that the information sought by the question was relevant and material for the purpose of enabling the appellant to intelligently exercise her right to interpose a peremptory challenge.

We have not discussed the questions sought to be presented on the pleadings, for the reason that the record is so confused as not to present them properly, and for the additional reason, that some of these questions are rendered immaterial by the answers to interrogatories returned by the jury.

Judgment reversed.

Filed May 18, 1887.