Argued January 4; reversed January 25; rehearing denied
March 28, 1944

JONES *v.* IMPERIAL GARAGES, INC., ET AL.

(145 P. (2d) 469)

Before BAILEY, Chief Justice, and BELT, KELLY, LUSK and HAY, Associate Justices.

*James C. Dezendorf,* of Portland (Dey, Hampson & Nelson and John Gordon Gearin, all of Portland, on the brief) for appellants.

*Milton R. Klepper,* of Portland, for respondent.

KELLY, J. At about 9:30 p. m. on August 18, 1942, plaintiff, Ray W. Jones, while walking across S. W. Third Avenue, in Portland, Oregon, was struck by a pickup truck owned by the defendant, Imperial Garages, Inc., and being driven by the defendant William Lange.

The trial resulted in a verdict in favor of plaintiff and against defendants for $12,500.00 general damages and $1,739.10 special damages.

Defendants present two assignments of error, which embrace three legal questions. These assignments of error are based upon the refusal of the trial court to set aside the verdict and grant a new trial.

During the examination of venireman James Rogers on his *voir dire* counsel for defendants asked him the following question: "Have you ever been a party to an action or proceeding?" To this question Mr. Rogers answered "No."

The record discloses that on January 30, 1934, after service of an appropriate citation upon Mr. Rogers, an order was entered by the Probate Department of the Circuit Court in and for Multnomah County, Oregon, declaring him to be incompetent and appointing his wife as the guardian of his person and estate.

In support of defendants' motion to set aside the verdict and for a new trial, the affidavit of Mr. James C. Dezendorf was presented. No affidavit or other showing was presented or made by defendant Lange or his guardian *ad litem* Mr. Kadderly.

It is urged by plaintiff that defendants' motion is insufficiently supported to justify a consideration of the effect of the untrue answer given by juror Rogers.

Plaintiff argues that Mr. Dezendorf's affidavit fails to show that Mr. Dezendorf had the entire charge of the case for the defendant corporation and hence the showing in behalf of the corporation in that regard is insufficient and also that because there is no affidavit disclosing lack of knowledge on the part of defendant Lange of the juror's answer, or the falsity thereof, the showing in behalf of defendant Lange is insufficient.

The first legal question, therefore, is whether the showing is sufficient in behalf of defendants to warrant the consideration of the effect of the juror's false answer upon the rights of defendants.

The cases upon which plaintiff relies with respect to his contention that defendants' showing is insufficient for the purpose stated are *Hooton v. Jarman Chevrolet Co., Inc., et al.*, 135 Or. 269, 293 P. 604, 296 P. 36, and *Barclay v. Oregon-Washington R. &N. Co.*, 75 Or. 559, 147 P. 541.

In *Hooton v. Jarman Chevrolet Co., Inc.*, supra, the misconduct of the juror consisted in giving heed to and being influenced by information to the effect that defendants were insured. In the opinion it is stated in effect that while one of defendants' attorneys made an affidavit that "the attorney for the defendant had no knowledge" of the misconduct of the juror and that fact was not learned until after the verdict was rendered therein, yet that statement alone is insufficient, "nor is it strengthened by any matter appearing of record." The concluding statement in the opinion is as follows:

"For the reason that the defendants failed to file the proper showing as to the time the information from the delinquent juror was received by them, we affirm the judgment of the lower court in denying the motion for a new trial."

In the case at bar, a hearing was had upon defendants' motion and testimony was taken. We quote from the testimony of Dr. Burkes who is shown to have been the source of defendants' information upon the matter. Mr. Dezendorf, defendants' counsel, conducted the examination and Dr. Burkes testified as follows:

"Q When did you first speak to me with respect to your previous contact with Mr. Rogers?

"A I don't recall. Probably the next day after the trial. I am not sure.

"Q May I refresh your recollection and ask you if it was not Saturday noon about two minutes to twelve, the Saturday following the trial?

"A I really don't know. It possibly was, if that is the date you say.

"Q Did you tell me about it during the trial, while the trial was going on?

"A No, I did not.

"Q Did you have an opportunity during the recess or anything of that kind that was declared while you were there, to mention that fact to me?

"A No. Court was still in session when I came off the witness stand, and I left.

"Q As I recall it, Dr. Kimberley was testifying when you came.

"A That is right.

"Q You stepped to the stand directly, and before any recess was declared, you were excused, and another witness was put on.

"A That is right.

"Q You did talk to me subsequently, at my request, when I asked you what your judgment of the condition of this man was, did you not?

"A I talked to you, yes, subsequently.

"Q And you went over your file with me concerning him?

"A Yes, some time later."

■ Taking the foregoing testimony into consideration in connection with the affidavit of Mr. Dezendorf, we are unable to say that the showing of defendants is insufficient because the defendant, William Lange, a minor of the age of seventeen years, did not make and file an affidavit to the effect that he was not apprised of the falsity of the juror's statement until the trial had been concluded.

■ Plaintiff also urges that Mr. Dezendorf's affidavit is insufficient under the doctrine of *Barclay v. Oregon-Washington R. & N. Co.*, supra, because it does not contain the statement that affiant had the entire charge of the case for the defendant. The following statement is made in Mr. Dezendorf's affidavit: "* * * I am one of the attorneys for the Defendants herein and I conducted the trial of the within action on their behalf."

To the writer it is absolutely incredible that a seventeen-year-old boy would note an answer made by a prospective juror to such a question as the one under consideration and almost as incredible that any other layman would make note of it. In this case the trial judge had overlooked it.

■ The rule has been adopted in this jurisdiction that in case the defendant is a corporation, the affidavit is properly made by its attorney. *Barclay v. Oregon-Washington R. & N. Co.*, supra.

Subdivision 2 of Section 5-802, O. C. L. A., designates misconduct of the jury or prevailing party as one of the causes for which a former judgment may be set aside and a new trial granted on motion of the aggrieved party when such cause materially affects the substantial rights of such party.

Section 5-804 *ibid.* provides:

"In all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated, shall be considered or regarded by the court. When the motion is made for a cause mentioned in subdivisions 1, 2, 3, or 4 of section 5-802, it shall be upon affidavit, setting forth the facts upon which such motion is based."

It will be noted that there is no statutory provision requiring more than one affidavit.

■ We think that the affidavit upon which defendants' motion is based, when considered in the light of the testimony subsequently taken is sufficient to present the question therein submitted, namely, whether a new trial should be ordered.

This brings us to the second question, namely, whether the giving of his false answer by the juror necessitates the granting of a new trial.

Plaintiff calls attention to the statutory rule that a new trial will be granted only where the alleged misconduct materially affects a substantial right. To this point, besides Sections 5-802 and 10-810, O. C. L. A., plaintiff cites *Goldfoot v. Lofgren,* 135 Or. 533, 296 P. 843; *Dolcort v. Equitable Assurance Society,* 58 Ohio App. 471, 16 N. E. (2d) 789; Hayne, New Trial and Appeal, Fifth Ed., Vol. 1, p. 226, Section 45, and 39 Am. Jur. 65, New Trial Section 45.

In *Goldfoot v. Lofgren,* supra, one of plaintiff's witnesses was asked if he had ever been convicted of a crime, to which he answered in the negative. After the trial defendant discovered that the witness had been convicted of a misdemeanor in the state of California. In that case this court applied the general rule that newly discovered evidence, which will serve only the purpose of impeachment is not deemed a sufficient reason for allowing a new trial.

In *Dolcort v. Equitable Assurance Society,* supra, a brother of the venireman actually drawn served upon the jury. The verdict was signed by only nine members of the jury and the juror who sat in place of his brother did not sign it or concur with the majority.

We quote from the opinion:

"In this case the juror, so far as the record discloses, had all the requisite qualifications to permit

his selection as a juror. He served and in his capacity as juror did not act unfavorably to the plaintiff and in effect supported the claim of the plaintiff. There is nothing to indicate that had another juror served in the place of Charles Heydorn, it would or could have changed the result of the verdict. Thus is presented the determinative feature in this case, namely, that despite the irregularity in the selection of the juror the cause of the plaintiff was not prejudiced.''

In the opinion, the Ohio court quotes the provisions of the Ohio Code (Section 11419-50, General Code) which are as follows:

"But no challenge to the array shall be made or the whole array set aside by the court, by reason of the misnomer of a juror or jurors; but on challenge, a juror or jurors may be set aside by reason of a misnomer in his or their names; but such challenge shall only be made before the jury is empaneled and sworn, and no indictment shall be quashed or verdict set aside for any such irregularity or misnomer if the jurors who formed the same possessed the requisite qualifications to act as jurors.''

Following this quotation the court speaking through Judge Hornbeck, say:

"Here is found the legislative attitude respecting the effect of irregularities in selecting prospective jurors. The situation presented in the instant case would not come under any provision of the quoted section, but a prospective juror who had answered under a misnomer could, as could the juror in the instant case, be discharged upon objection to the irregularity if timely made, but if such objection was not made, it is too late to object to the juror after verdict.''

The distinction between *Goldfoot v. Lofgren* and *Dolcort v. Equitable Assurance Society* on the one hand

and the case at bar on the other is quite obvious. In the instant case we are not dealing with mere impeaching testimony as in the Goldfoot-Lofgren case, neither are we dealing with a verdict in which the record discloses that the offending juror did not concur as in the Dolcort-Equitable Assurance Society case.

The Fifth Edition of Hayne, New Trial and Appeal, is not available to the writer.

■■ The citation to Vol. 39 American Jurisprudence, p. 65, Sec. 45, declares the same rule as that prescribed by statute, namely, that in order to be tenable the cause relied on as ground for a new trial must be one which materially affects the substantial rights of the aggrieved party. It is interesting, however, to note the following statement found therein:

> "There is also a conflict as to whether false answers by a juror on his preliminary examination are "misconduct", under statutes permitting new trials for misconduct of the jury. The courts of some jurisdictions hold in the affirmative, on the ground that such conduct impairs the right to challenge * * * *"

This statement is supported by citation to the case of *State v. Lauth,* 46 Or. 342, 80 P. 660, 114 Am. St. Rep. 873.

The doctrine of *State v. Lauth,* supra, has not been modified or overruled by this court. It is stated in the opinion in that case by way of a quotation from an opinion by Mr. Chief Justice Elliott in *Pearcy v. Michigan Mutual L. Ins. Co.,* 111 Ind. 59, 61, 12 N. E. 98, 99, 60 Am. Rep. 673, pertinent portions of which quotation we venture to repeat:

> "* * * the examination of a juror on his voir dire has a two fold purpose, namely, to ascertain

whether a cause for challenge exists, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. * * *

"* * * It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact nor concealing any material matter, since full knowledge of all material and relevant matters is essential to a fair and just exercise of the right to challenge either peremptorily or for cause. A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct is prejudicial to the party, for it impairs his right to challenge."

■ We think that reversible error was committed in overruling defendants' motion to set aside the verdict and grant a new trial on the ground of misconduct of the juror.

■ In answer to a question by defendant's attorney as to what doctors plaintiff had consulted, plaintiff referred to doctors whom he characterized as "insurance company doctors." We are unwilling to hold that this answer reflects a wilful intention to create prejudice in the minds of the jury because of a supposed liability on the part of an insurance company. We think that we are justified, however, in suggesting that upon a rehearing plaintiff should be more guarded in that respect.

To the third question which obviously is whether plaintiff's reference to "insurance company doctors" should have resulted in an order declaring a mistrial, we answer in the negative.

The judgment of the circuit court is reversed and the cause is remanded for such further proceedings as are not inconsistent herewith.