[No. 35937. *En Banc.* January 12, 1962.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM H. SIMMONS, *Appellant.*[*]

[*]Reported in 368 P. (2d) 378.

*Wm. H. Simmons, J. Lael Simmons,* and *Philip R. McIntosh,* for appellant.

*Charles O. Carroll* and *Anthony Savage, Jr.,* for respondent.

HILL, J.—The issue here is whether a defendant convicted of assault with intent to commit rape had a fair trial. ▮ Our conclusion is that he did not. The accumulation of prejudicial incidents and misconduct, in a case where the factual issue was a very close one, tipped the scale so

heavily against the defendant that any semblance of a fair trial was lost.

At least half of the twenty assignments of error on this appeal have some merit. Some of these relate to the conduct of the deputy prosecuting attorneys, and we have from time to time regretted, but condoned, similar conduct where the proof of guilt was clear. We cannot, in this case, avail ourselves of the usual apologia for overzealous prosecutors: that, in any event, it would not have changed the result.

That the result was susceptible of change, on the issue of intent to rape, is made clear by a brief recital of the facts divorced from the personalities involved. A man and a married woman, who have just met, have some drinks together in a cocktail lounge; sexual matters come into the conversation. She testified that he kept bringing up the subject and that she avoided it; he testified that she introduced the subject. She testified to intimacies while they were in the cocktail lounge, which he denied. If we accept her version, the fact remains that she did continue in his company. They drove in the man's car to an apartment house, and the man had a key to one of the apartments. The explanation of how they happened to go into the apartment is divergent. He testified that while in the cocktail lounge she expressed a desire to be alone with him; he showed her the key to the apartment; and she indicated a willingness to accompany him. She denied seeing the key, but testified that when they arrived at the apartment house he told her he was going into a friend's apartment and insisted that she accompany him.

Not only what happened in the apartment, but the man's intent, was what the jury had to determine.

The man, admittedly, was taking the woman to the apartment with the intention of having intercourse with her; however, he denies any intent to commit an assault or a rape, and contends that he believed it was her desire to have intercourse with him and that when she said she "couldn't go through with it," he stopped his advances and they left the apartment.

Just why she entered the apartment, after she saw the

man unlock the door and when she was immediately aware that there was no one else there, is far from clear; but there can be no doubt that she testified to conduct by the man which would constitute an assault (if she did not invite it and consent to it), and from which the jury could infer an intent not to be diverted from his purpose.

In any event, it is agreed that if he had such an intent he abandoned it, and that there was no act of intercourse; that they left the apartment together; and that she rode in his car from the apartment to the downtown business section of the city where she left the car.

Now the man's own testimony establishes that he was not an admirable character; he freely admits an intent to commit adultery. When you translate this anonymous man into a municipal judge presiding over the state's busiest traffic court and add the further fact that the woman came to see him in his official capacity about a traffic ticket, which he admits he "fixed" for her after the incidents to which we have referred, the picture worsens. But it was not because of any of these derelictions that he was being tried; the charge was assault with intent to commit rape.

Evidence on the issue of intent, while sufficient to sustain a conviction, was by no means so overwhelming as to preclude the possibility of an acquittal.

The defense was that he was "framed" by a police officer, who induced the woman to lead him on, and, no matter how willing he was to be led, there never was any intent on his part to overcome a forceful resistance.

 We shall not attempt a full-scale review of all the assignments of error, but shall content ourselves with enough instances of obviously prejudicial error to make it clear that a new trial is necessary.

The implications and innuendoes inherent in many questions asked the defendant on cross-examination are completely inexcusable and can have no conceivable justification. We quote a few:

"Now, do you usually take women who are involved in your court in some way to lunch?"

"Have you ever taken any other women—"

". . . Is this a usual place for taking women?"

"Had you ever asked anybody else that was in your court to—a witness or a victim, or something of that nature, to go up to an apartment with you?"

"Have you ever been asked to leave any establishment where liquor has been sold?"

"Have you been arrested for drunk driving?"

"Have you ever been arrested for anything besides this particular case?"

"Now, is this particular ticket you fixed for her—"

"This ticket you cancelled for her—"

"This warning ticket, or this ticket you crossed off as a warning . . ."

"Tell me, Judge Simmons, did you take your oath in the court room here today as seriously as you took your oath of marriage vows?"

The state, capitalizing on the concept that a judge—like Caesar's wife—should be above suspicion, lost no opportunity to make it clear to the jury that this particular judge was not only not above suspicion, but that he was dragging his judicial robes in the gutter. The following questions, asked the witness Tedzak (a bartender) on cross-examination, make clear the *modus operandi*.

"Do you know that Judge Simmons is a married man with three children, Mr. Tedzak?"

"Mr. Tedzak, is it your testimony that Judge Simmons takes off his black robes and comes down—"

"And goes into a public place—"

"Is it your testimony, Mr. Tedzak, that Judge Simmons, a well-known person in this community—"

"And would you feel that it was somewhat strange for a Judge to be kissing a person—"

"Did you not think it was strange—"

"What was your feeling when you saw the Judge?"

". . . Can you recall, was Mr. Simmons ever there before with a woman?"

The state followed this up with the following statement, made at the very end of its closing argument to the jury:

"I submit to you that there should be no room for sympathy in your hearts for this man. He has violated every trust that anyone ever put in him.

"I went to high school in this city, Ladies and Gentlemen. I went to Cleveland High School, and I remember in our civic's class we studied our high school's namesake, Grover Cleveland, who has been in the news of late because he is apparently the only president to have a son born while in the White House, I read the other day. But the thing I remember most from 10 or 11 years ago was his motto that made him famous as a corruption buster, 'Public office is a public trust,' and I submit to you that a public office is a public trust and that this man has violated this trust in every way that man has ever heard of, and I submit to you further that we have proved beyond a reasonable doubt that this defendant is guilty of the crime of assault in the second degree, and I ask you to return a verdict on this evidence of that crime."

The state's naive answer to the assignments of error relating to improper cross-examination is that of twenty-five questions complained of, objections to twenty-two were sustained and, hence, there could be no prejudice. The cross-examiner must have known that objections would be sustained to the questions, which were obviously designed to prejudice the defendant and to put the defense in the unfavorable position of having to make constant objections.

Recent critical comments on this procedure by counsel will be found in *Swanson v. Evans Oil, Inc.* (1961), 12 App. Div. (2d) 875, 209 N. Y. S. (2d) 860; *Houston v. Pettigrew* (1960) (Okla.), 353 P. (2d) 489; *Brooks v. Gilbert* (1959), 250 Iowa 1164, 98 N. W. (2d) 309; *McCrae v. McCoy* (1949), 214 S. C. 343, 52 S. E. (2d) 403.

The usual excuse for improper argument (*i.e.*, it was in answer to something equally improper that the defense had said) is quite inadequate to explain why the theme of betrayal of a public trust is the last thing which the jury heard from the prosecution as it closed its case on a charge of assault with intent to commit rape. Our views on improper argument have been expressed at some length in *State v. Case* (1956), 49 Wn. (2d) 66, 298 P. (2d) 500; and *State v. Reeder* (1955), 46 Wn. (2d) 888, 285 P. (2d) 884.

We shall make no detailed mention of the further claims of misconduct by counsel. Deputy prosecutors vouched for

the veracity and integrity of certain witnesses and expressed unwillingness to believe another; they called a witness in disregard of the trial court's prior determination that his testimony concerned a collateral matter and would not be admitted; but no good purpose will be served by elaboration. See *State v. Case, supra.*

Some of the misconduct by the deputy prosecutors was not without provocation; defense counsel were adopting the not unfamiliar tactic of trying the police officers and the prosecutor's office for a conspiracy to "frame" their client. Suffice it to say that neither side had a monopoly on the low blows.

It should be said that none of the lawyers whose names appear as attorneys and as counsel for the appellant, or for the respondent on this appeal, participated as attorneys and counsel in the trial court.

In addition to the misconduct in cross-examination and argument, there are at least two other grounds on which a new trial could be granted.

The trial court abused its discretion in refusing the defendant's offer of proof that the reputation of the prosecuting witness for chastity was bad. While we have ruled out such testimony as having no bearing on the issue of veracity, we have indicated that it is admissible on the issue of consent in a rape case. *State v. Severns* (1942), 13 Wn. (2d) 542, 125 P. (2d) 659.

The state concedes that:

" . . . the general rule in the United States and probably in this state is that in a prosecution for forcible rape evidence of the prosecuting witness's reputation for chastity is admissible as bearing on the issue of consent. . . ."

However, the state urges that in cases involving assault with intent to commit rape, there having been no intercourse, consent is not an issue and the rule of admissibility does not apply. The state cites no cases supporting its position.

■ Our own investigation indicates that the case authority generally supports the statement appearing in Clark & Marshall, Law of Crimes (6th ed. 1958), § 5.14, p. 315:

"In criminal law, as in civil cases, an act does not constitute an assault, or an assault and battery, if the person on or against whom it is committed freely consents to the act, provided he or she is capable of consenting, and the act is one to which consent may be given, and the consent is not obtained by fraud. . . ."

See also 1 Wharton's Criminal Law (12th ed.), § 180, p. 233.

The Circuit Court of the District of Columbia has put it very tersely: "Generally where there is consent, there is no assault." *Guarro v. United States* (1956), 237 F. (2d) 578, 581.

The reputation for chastity of the prosecuting witness is generally admitted in "assault with intent to rape" cases, as relevant to the issue of consent to the physical contacts which constitute the assault. There is no assault where the complaining witness has consented to or invited the advances which constitute the assault. *State v. McCune* (1898), 16 Utah 170, 51 Pac. 818. As was said in *People v. Cieslak* (1925), 319 Ill. 221, 225, 149 N. E. 815, where the defendant was charged with "assault with intent to rape,"

". . . Where the improper conduct is admitted and the defense is that the prosecutrix by her conduct invited the familiarity or consented to the indecent liberties taken, it is proper for the accused to show that the general reputation of the prosecutrix for chastity is bad. . . ."

Other cases in point include: *Gish v. Wisner* (1923), 288 Fed. 562 (C. C. A. 5th) (applying Mississippi law); *Peterson v. State* (1925), 90 Fla. 361, 106 So. 75; *State v. Perrine* (1924), 156 La. 855, 101 So. 243; *Smith v. State* (1921), 150 Ark. 193, 233 S. W. 1081.

The state urges further that "whether evidence is relevant to an issue lies within the sound discretion of the trial court," (quoting *Chase v. Beard* (1959), 55 Wn. (2d) 58, 61, 346 P. (2d) 315) and that it is

". . . the policy to discourage those evidentiary matters which tend only to besmirch the witness without any other useful purpose, . . ."

(citing *State v. Belknap* (1906), 44 Wash. 605, 608, 87 Pac. 934, and *State v. Gaffney* (1929), 151 Wash. 599, 276 Pac. 873, 65 A. L. R. 405).

■ Concededly, we have taken the position that evidence, though relevant, may be excluded where "the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." *State v. Goebel* (1950), 36 Wn. (2d) 367, 379, 218 P. (2d) 300.

This is not such a case. The jury was instructed that if they had a reasonable doubt as to whether there was an intent to commit rape, they could find the defendant guilty of third-degree assault, and they were further instructed that

". . . Any intentional, unpermitted, unprivileged, forceful touching of another is also within the meaning of the term 'assault' regardless of whether any actual physical harm is done to the victim."

As we have already indicated, the evidence of the reputation for chastity of the prosecuting witness was relevant on the issue of whether she consented to the advances admitted by the defendant, in the apartment, which at least constituted a touching and would, absent any intent to rape, under the instruction given constitute an assault if made without her invitation or consent.

Under the circumstances, the trial court abused its discretion if it concluded either that the testimony as to the prosecuting witness' reputation for chastity was not relevant, or that, if relevant, it served no useful purpose other than besmirching the witness. To exclude it was to deny the defendant a fair trial on the issue of whether she invited his advances or consented thereto. Such an invitation prevents nonforcible advances, in response thereto, from being an assault—whatever else they may be in the catalogue of criminal offenses. *Guarro v. United States, supra.*

The second incident, which raises a serious doubt as to whether the defendant had a fair trial, was the presence on the jury of Mrs. Hattie Risen whose nephew (during the preceding month) had been fined $235 and sentenced to thirty days in the county jail by the defendant (sitting as a municipal judge). The nephew had served the jail sentence, and the fine had been paid by the juror's husband. The juror knew this (the nephew lived in her home), but

she did not disclose it. The juror may not have been prejudiced against the defendant by this circumstance, as she avers, but the fact remains that no defense counsel in his right mind would have permitted her to remain on the jury had he known of it.

The examination of a juror on *voir dire* has a twofold purpose: To ascertain whether there is a basis for a challenge for cause; and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge. *State v. Tharp* (1953), 42 Wn. (2d) 494, 499, 256 P. (2d) 482; *Jones v. Imperial Garages, Inc.* (1944), 174 Ore. 49, 145 P. (2d) 469; *State v. Hunter* (1935), 183 Wash. 143, 153, 48 P. (2d) 262; *State v. Lauth* (1905), 46 Ore. 342, 80 Pac. 660; *Pearcy v. Michigan Mut. Life Ins. Co.* (1886), 111 Ind. 59, 12 N. E. 98, 60 Am. Rep. 673; 5 Wharton, Criminal Law and Procedure (1957), § 1997, p. 131.

A juror who misrepresents or conceals material and relevant matters is guilty of misconduct, and it may be prejudicial to either or both parties because it impairs the right to challenge for cause or peremptorily. *Jones v. Imperial Garages, Inc., supra; State v. Lauth, supra; Pearcy v. Michigan Mut. Life Ins. Co., supra*; 5 Wharton, Criminal Law and Procedure, *supra*.

Two points are made in the *Pearcy* case: One, that while the juror's answers were technically truthful, he withheld material information. The holding of the court, as stated in the syllabus, was:

"In the examination of a juror upon his *voir dire*, if the general question asked fairly arouses his attention and directs it to the information desired, it is enough without specific questions covering minute phases of the subject, and it is the duty of the juror to make full and truthful answers, neither falsely stating any fact nor concealing any material matter within the general scope of the question, and any violation of this rule is such misconduct as is prejudicial to the party."

The second: that it was not necessary to decide whether the information withheld would have warranted a challenge for cause, as a new trial would be granted if the information sought by the question was relevant and ma-

terial for the purpose of enabling the appellant to intelligently exercise the right to interpose a peremptory challenge.

In the instant case, Mrs. Risen was the last juror selected, and, consequently, she had heard the examination of all of the other jurors which had included responses in the negative to such questions as:

"Now with reference to traffic offenses, Judge Simmons is a Traffic Judge, you know. Did anything ever occur along that line in the family?"

"No one in your family appeared before Judge Simmons— And you understand what I mean by that, I don't mean necessarily that you would be unhappy about it, you might be pleased, and on the other hand, you might not be, and we want to know."

She had been asked by the trial court:

"You have heard all the other questions that have been asked the other jurors. Now, is there anything you might answer in any substantial different manner?"

Her answer was "no." While being examined by one of the deputy prosecuting attorneys, the following questions were asked and answers given:

"Q. Mrs. Risen have you ever known anybody, friend, relation, close associate, et cetera, that has been a victim of any type of criminal activity? A. No. Q. Or conversely of these people or yourself, ever been charged with any type of criminal activity? A. No."

To justify this last answer, the state says that the only question "that could possibly have called for the revelation of such information" was asked by the prosecutor; and that Mrs. Risen was justified, by the tenor of the questions asked of the other prospective jurors, in assuming that traffic offenses (such as negligent driving and driving while under the influence of alcohol, with which her nephew had been charged) were not included in the category of "criminal activity." There seems to be an implication that the defense was remiss in not probing further in the area of possible traffic offenses.

It is, of course, immaterial which side asks a particular

question; both have a right to rely on the answer. Assuming a possible distinction in the juror's mind between criminal activity and driving under the influence of alcohol, it is impossible to overlook that her response to the trial court's general question was to the effect that she, too, would have answered "no" to the question theretofore asked another juror as to whether any member of her family had appeared before Judge Simmons.

We have gone a long way to uphold verdicts against posttrial attacks by assuming that jurors observed their oath and acted fairly and impartially, even though there have been claims of misconduct and bias and prejudice; and we have repeatedly held that the granting of a new trial on such grounds is within the sound discretion of the trial court. See *State v. Tharp* (1953), 42 Wn. (2d) 494, 256 P. (2d) 482; *Nelson v. Placanica* (1949), 33 Wn. (2d) 523, 206 P. (2d) 296; *State v. Cooney* (1945), 23 Wn. (2d) 539, 161 P. (2d) 442.

██ However, such a discretion may be abused. Where a person serves on a jury who, if not excused for cause, would certainly have been peremptorily challenged if certain questions on *voir dire* had been answered truthfully, it has been held to be an abuse of discretion not to grant a new trial. *Glover v. Maddox* (1959), 100 Ga. App. 262, 111 S. E. (2d) 164; *Wright v. Bernstein* (1957), 23 N. J. 284, 129 A. (2d) 19; *Marvins Credit Inc. v. Steward* (1957) (Mun. Ct. App. D. C.), 85 Wash. L. Rep. 990, 133 A. (2d) 473. Each of these cases contains an excellent discussion of the rationale of the rule, and particularly the New Jersey opinion in which the then Chief Justice Arthur T. Vanderbilt and the present Chief Justice Joseph Weintraub joined. While these are all civil cases, more peremptory challenges are allowed in criminal cases, and the importance of being able to use them intelligently is of equal, if not greater, importance.

Under the circumstances of this case, it seems to us that the trial court abused its discretion in not granting a new trial on the basis of the concealment of the juror of her nephew's experience in Judge Simmons' court.

Inasmuch as a new trial is being granted, we will somewhat summarily dispose of several matters which we deem of no great consequence, but which may arise again.

The defendant's proposed instructions No. 10 and 3 (assignments of error No. 14 and 15) were properly rejected as being unnecessary; the matters stated therein being adequately covered in other instructions.

The admission of exhibit No. 32, the rental agreement for the apartment signed by the defendant under the name of Campbell, was made admissible by the defendant's explanation of how he happened to have possession of the key to the apartment (assignment of error No. 16).

The testimony of Adrian Webster regarding the processing of the citation issued to the prosecuting witness was admissible (assignment of error No. 11).

The propriety of testimony offered in rebuttal depends so much on the posture of the case at the time it is offered that any comment here could be of no assistance to the court in the event of a retrial.

The defendant, not having had a fair trial for a variety of reasons, the judgment is reversed, and the case remanded for a new trial.

FINLEY, C. J., DONWORTH, WEAVER, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

OTT, J. (concurring in the result)—I concur in the result. The defendant was denied a fair trial, with Mrs. Hattie Risen serving as a juror, and likewise when the court denied the defendant's offer of proof relative to the reputation of the prosecuting witness for chastity. *State v. Severns*, 13 Wn. (2d) 542, 125 P. (2d) 659 (1942).

Defense counsel, from the very beginning of the trial, sought through artifice to inject error into the record. The questions asked by defense counsel *invited* the cross-examination to which the majority now ascribe error. I would not reward such machinations.

MALLERY, J. (dissenting)—Regardless of the number of zeros that are added together, the sum is still zero. Trifles and nonerrors cannot add up to reversible error. No rule

has or can be formulated for the guidance of trial courts as to what number or combinations of nonerrors will amount to reversible error. Such aggregations of trifles lie in the realm of mere whim.

I am in accord with the rule which admits evidence of the promiscuity of a complaining witness in *a rape case* where *consent* is a *defense.*

The proclivity of a promiscuous woman to give her consent to intercourse conflicts with her testimony that she did not consent, and the jury may consider to what extent this conflict affects the credibility of her testimony to the contrary. This is the basis for the rule. It is obviously inapplicable in assault cases.

It was not proved nor is it logical to presume that promiscuous women invite or consent to assaults in the same way that they consent to intercourse. Their testimony as to assault, therefore, does not conflict with their proclivity for promiscuous intercourse, and no rational basis exists for holding that their credibility is adversely affected by their promiscuity any more than in any other kind of a case.

The defense in this case was an attack. The officers were guilty of a "frame-up", and the complaining witness was promiscuous. The trial court did not err in excluding these collateral matters.

The duty to avoid error rests equally upon all parties in litigation. An obstreperous defense should not be heard to assert any error which is provoked and invited.

I would affirm.