# Third District Court of Appeal

## State of Florida

Opinion filed May 14, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1124
Lower Tribunal No. 08-310
_____


**Steven Sikes, etc.,**
Appellant/Cross-Appellee,

vs.

**R.J. Reynolds Tobacco Company,**
Appellee/Cross-Appellant.


An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Eaton & Wolk, PL, and Douglas F. Eaton, for appellant/cross-appellee.

King & Spalding LLP, and Val Leppert and William L. Durham II (Atlanta, GA), for appellee/cross-appellant.


Before EMAS, SCALES and GOODEN, JJ.

SCALES, J.

In this Engle-progeny tobacco case,[1] Steven Sikes, as personal representative of the estate of Joyce Sikes, ("Sikes") appeals a May 26, 2023 final judgment following a jury verdict in favor of R.J. Reynolds Tobacco Company. Sikes argues that this Court should reverse and remand for a new trial because of two jury selection issues concerning the exercise of peremptory challenges.

Sikes concedes that his trial counsel did not exhaust his peremptory challenges during jury selection. Nevertheless, Sikes claims that (i) the trial court's jury selection procedure[2] "runs afoul of the law requiring that a party

---

[1] Engle-progeny cases arise out of a class action brought by a group of smokers, or their survivors, against major cigarette companies and two industry organizations for smoking-related injuries caused by addiction to nicotine. See Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

[2] The trial court used the "random jury box method." Under this method, after the jury pool is questioned by the parties' attorneys and certain prospective jurors are excused for hardship reasons, the trial court uses a random number generator to reorder the jury pool. The new sequence of prospective jurors is reflected on a random list that the court does not share with the attorneys. Using the random list, the trial court, on a one-by-one basis, then calls out a prospective juror's number and the parties' attorneys either accept the prospective juror, challenge the prospective juror for cause, or exercise a peremptory challenge on the prospective juror. The trial court uses this method to place six persons on the jury panel and three persons to serve as alternates. Even after a prospective juror is accepted to the jury panel or as an alternate, the court permits the parties' attorneys to exercise a peremptory challenge at any time until the persons are sworn. But if an attorney exercises a backstrike on a prospective juror on the jury panel, that person is replaced on the jury panel by someone from the random list, rather than by an alternate.

be allowed to view the entire venire when making a decision to use a peremptory strike on a panel juror," and (ii) relatedly,[3] the trial court erred in failing to strike for cause prospective juror 78, who ended up on the jury panel. We affirm the final judgment because Sikes failed to preserve either jury selection issue for appellate review.

To preserve for appellate review a challenge to the trial court's jury selection method as it pertains to the use of peremptory challenges, a party must do more than, as Sikes did here, simply object to the procedure that was used to select the jury. The party must (i) exhaust his or her peremptory challenges, (ii) identify an objectional juror that is still on the jury panel, (iii) request and be denied an additional peremptory challenge as to the objectionable juror, and (iv) prior to the jury panel being sworn, object to the composition of the jury. Compare Ter Keurst v. Miami Elevator Co., 486 So. 2d 547, 550 (Fla. 1986) ("The Ter Keursts' counsel did not object to the jury as finally composed; he evidenced no dissatisfaction with the jurors who sat, even though obviously dissatisfied with the method of selection. We do not find this case to present fundamental error and, therefore, hold that the

---

[3] According to Sikes, "the risk in using the third [peremptory] strike was that the next juror would be worse for [Sikes], and the court would deny [counsel's] request for an additional peremptory, leaving [Sikes] with two choices, both of them bad."

3

contemporaneous objection rule applies. The Ter Keursts would have had to object to the jury as finally composed to prevail on appeal.") with Tedder v. Video Elecs., Inc., 491 So. 2d 533, 534 (Fla. 1986) ("The trial judge in the instant case swore four prospective jurors prior to completing the selection process of the entire panel and prohibited backstriking of a sworn juror after counsel completed the voir dire of the remaining two panel members. Respondents preserved the issue on appeal by appropriate objections at trial and by the attempted use of their last peremptory challenge on one of the sworn jurors. By attempting to backstrike and not being allowed to use their peremptory challenge to do so, respondents have shown prejudice and the point has been properly preserved for appeal.").[4] Indeed, it is well settled that

---

[4] In Paul v. State, No. 4D2023-2680, 2025 WL 908487 (Fla. 4th DCA Mar. 26, 2025), the Fourth District considered a challenge to a similar jury selection method. Unlike here, the appellant in Paul preserved the jury selection issue for appellate review. Id. at *5 ("Paul exercised all his peremptory challenges and identified four objectionable jurors that he would have stricken with additional peremptories. Additionally, before the jury was sworn, Paul renewed his 'objection to the court's procedure in not giving us the type of opportunity to exercise peremptory challenges intelligently by hiding from us the identity of the people that come up once the strike is made.'"). Concluding that "[n]o constitutional provision, statute, rule, or case law prohibits Florida courts from using the method of jury selection used in this case," the Paul court found that "the trial court did not abuse its discretion in using a randomized 'jury box' method in which peremptorily stricken jurors were replaced by the next randomly-drawn members of the venire." Id. at *8. Our sister court also certified the following question of great public importance to the Florida Supreme Court:

4

"unless the trial court is advised that there is still an objectionable juror on the panel, the trial court has the right to assume that by accepting the jury, the party is satisfied with the panel members." Aquila v. Brisk Transp., L.P., 170 So. 3d 924, 926 (Fla. 4th DCA 2015); Santa Fe Dev. Corp. v. Randolph, 506 So. 2d 18, 18 (Fla. 3d DCA 1987) ("[T]he peremptory challenge point has not been properly preserved for appellate review, as an appellate court will not pass on abstract legal questions concerning a jury selection process where, as here, the party complaining evinces no dissatisfaction whatever at trial with the ultimate jury selected.").

For similar reasons, Sikes failed to preserve his claim that the trial court erred in denying his cause challenge to juror 78. "[I]n order to preserve the denial of a challenge for cause for review, the complaining party must

---

DOES TER KEURST V. MIAMI ELEVATOR CO., 486 SO. 2D 547 (FLA. 1986), REQUIRE THAT A PARTY EXERCISING A PEREMPTORY CHALLENGE KNOW THE IDENTITY OF THE JURY PANEL MEMBER WHO WILL BE SEATED IF THE CHALLENGE IS EXERCISED?

Id. We express no opinion on the validity of the instant jury selection method because, as in Ter Keurst, Sikes's counsel failed to preserve the issue for appellate review and, even if the trial court did err in employing the "random jury box method" of jury selection, any such error was not fundamental. Ter Keurst, 486 So. 2d at 550; see also Hutchinson Island Club Condo. Ass'n v. Degraw, 774 So. 2d 37, 39 (Fla. 4th DCA 2000) ("[E]ven if error occurred, unpreserved errors as to the manner in which the parties exercise challenges are not fundamental.").

exhaust peremptory challenges, request an additional peremptory challenge, and identify an objectionable juror who would not have been seated if a peremptory challenge had been available." Seadler v. Marina Bay Resort Condo. Ass'n, 376 So. 3d 659, 664 n.3 (Fla. 2023). The complaining party must also object to the composition of the jury immediately before the jury is sworn. See Milstein v. Mut. Sec. Life Ins. Co., 705 So. 2d 639, 640 (Fla. 3d DCA 1998) (recognizing that the purpose of requiring the renewed objection is "so that the court will be made aware that the objecting party is insisting on the objection, and so that the court will have a last clear chance to take corrective action if needed"). "By not renewing the objection prior to the jury being sworn, it is presumed that the objecting party abandoned any prior objection he or she may have had and was satisfied with the selected jury." Carratelli v. State, 961 So. 2d 312, 318 (Fla. 2007) (quoting Zack v. State, 911 So. 2d 1190, 1204 (Fla. 2005)).

Affirmed.

GOODEN, J. (specially concurring).

Because I believe that peremptory challenges are an important tool in a trial lawyer's toolbox and are fundamental in the selection of impartial jurors, the use of the random-box method gives me great pause.

Peremptory challenges are part of our common law heritage. See Mathis v. State, 12 So. 681, 688 (Fla. 1893); Lewis v. United States, 146 U.S. 370, 376 (1892) ("The right of challenge comes from the common law with the trial by jury itself, and has always been held essential to the fairness of trial by jury."); Swain v. Alabama, 380 U.S. 202, 212–19 (1965), overruled on other grounds by Batson v. Kentucky, 476 U.S. 79 (1986) (tracing history of peremptory challenges and struck jury system).  In fact, entitlement to such challenges predates Florida's statehood and Constitution. See Act of November 23, 1828, § 48, 1839 Compilation of the Public Acts of the Legislative Council of the Territory of Florida 89, 99 ("[A]t the trial of all causes brought to the superior or county courts, either party shall have the right to challenge peremptorily four jurors, and as many more as he can show good cause for."); Fla. Const. of 1838.

And so, peremptory challenges are well-engrained in the fabric of our society.  They are essential to ensure the right to a fair and impartial jury

7

afforded by our Constitution.  See Art. I, § 16(a), Fla. Const. ("In all criminal prosecutions the accused shall . . . have the right . . . to have a speedy and public trial by impartial jury . . . ."); Art. I, § 22, Fla. Const. ("The right of trial by jury shall be secure to all and remain inviolate."); Meade v. State, 85 So. 2d 613, 615 (Fla. 1956); Hayes v. State, 94 So. 3d 452, 460 (Fla. 2012), disapproved of on other grounds by State v. Johnson, 295 So. 3d 710, 716 (Fla. 2020) ("Affording a criminal defendant the full use of his or her allotted peremptory challenges is an essential part of securing a fair and impartial jury under Florida's constitution, and his or her use of peremptory challenges is limited only by the rule that such challenges may not be used to exclude prospective jurors because of their race, ethnicity, or gender.").  And these challenges could implicate other provisions in our Constitution as well.  See generally Art. I, § 1, Fla. Const. ("All political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people."); Art. I, § 9, Fla. Const. ("No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself."); Art. I, § 21, Fla. Const. ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."); United States v. Harbin, 250

8

F.3d 532, 540 (7th Cir. 2001) ("Therefore, although peremptory challenges are not constitutionally required, due process may be violated by a system of challenges that is skewed towards the prosecution if it destroys the balance needed for a fair trial."); Muhammad v. State, 782 So. 2d 343, 351 (Fla. 2001) ("Criminal defendants have a due process right to be physically present in all critical stages of trial, including the examination of prospective jurors.").

At their core, peremptory challenges serve an integral part of our jury system and the administration of justice. They provide the valuable right to reject certain jurors from serving. Colson v. State, 40 So. 183, 187 (Fla. 1906). This assures the selection of a qualified and unbiased jury by enabling each side to exclude potential jurors believed to be most partial towards the other side—thus eliminating the extremes of partiality on both sides. Holland v. Illinois, 493 U.S. 474, 484 (1990). It allows litigants to engage with the jury selection process. This helps foster public trust in our jury system. See Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 630 (1991) ("It may be true that the role of litigants in determining the jury's composition provides one reason for wide acceptance of the jury system and of its verdicts.").

Yet use of the random-box method erodes the role of peremptory challenges in our jury system. Indeed, it prevents the parties from viewing the panel as a whole. See Ter Keurst v. Miami Elevator Co., 486 So. 2d 547, 549 (Fla. 1986) ("The only fair scheme is to allow the parties to exercise their challenges singularly, alternately, and orally so that, before a party exercises a peremptory challenge, he has before him the full panel from which the challenge is to be made."); Grant v. State, 429 So. 2d 758, 760–61 (Fla. 4th DCA 1983) (Hurley, J., specially concurring) ("The right to the unfettered exercise of peremptory challenges- which, I believe, includes the right to view the panel as a whole before the jury is sworn- is an essential component of the right to trial by jury, a right that is fundamental to the American scheme of justice.") (internal citation omitted); Florida Rock Indus., Inc. v. United Bldg. Sys., Inc., 408 So. 2d 630, 632 (Fla. 5th DCA 1981) ("A party litigant, whether plaintiff or defendant, is entitled to consider the panel as a whole at any time that litigant has peremptory challenges remaining, and exercise those challenges at any time until the jury is sworn."). This denies the parties an opportunity to gain all the necessary information upon which to base their strikes—indeed, they are operating blind as they do not know who is next in line. It deprives them of the ability to intelligently and strategically use those challenges. See generally Loftin v. Wilson, 67 So. 2d 185, 192 (Fla. 1953)

10

(citing Pearcy v. Michigan Mut. Life Ins. Co., 12 N.E. 98, 99 (Ind. 1887)) ("The examination of a juror on his *voir dire* has a twofold purpose, namely, to ascertain whether a cause for challenge exists, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law."); Van Sickle v. Zimmer, 807 So. 2d 182, 185 (Fla. 2d DCA 2002) ("A litigant is entitled to view the panel as a whole in order to intelligently and effectively use his or her peremptory challenges.").

Thus, this process undermines and effectively renders these challenges worthless. Lawyers are hesitant to exercise their peremptory challenges as each move is a gamble. And in some cases, the random-box method may even interfere with a party's ability to preserve the issue for appeal. See Johnson, 295 So. 3d at 714 (explaining preservation); Busby v. State, 894 So. 2d 88, 96–97 (Fla. 2004) (same); Trotter v. State, 576 So. 2d 691, 693 (Fla. 1990) (same).

And, especially in criminal cases, the random-box method produces a misordering of our priorities. It elevates the desire to move trials quickly over the rights of the defendant. See Georgia v. McCollum, 505 U.S. 42, 62 (1992) (Thomas, J., concurring) ("In effect, we have exalted the right of citizens to sit on juries over the rights of the criminal defendant, even though it is the defendant, not the jurors, who faces imprisonment or even death.").

11

Above all, Florida's constitutional right to a fair and impartial jury should be jealously guarded. See Art. I, § 16(a), Fla. Const.; Art. I, § 22, Fla. Const. "[T]he ability to exercise peremptory challenges as provided under Florida law is an essential component to achieving Florida's constitutional guaranty of trial by an impartial jury." Busby, 894 So. 2d at 102. That "is destroyed when the right to make an intelligent judgment as to whether a juror should be challenged is lost or unduly impaired." Minnis v. Jackson, 330 So. 2d 847, 848 (Fla. 3d DCA 1976). Trial judges should not be employing methods that defeat a litigant's ability to "use his peremptory challenges intelligently and effectively." Tedder v. Video Elecs., Inc., 491 So. 2d 533, 535 (Fla. 1986). See also Jackson v. State, 464 So. 2d 1181, 1183 (Fla. 1985) ("A trial judge has no authority to infringe upon a party's right to challenge any juror, either peremptorily or for cause, prior to the time the jury is sworn.").